30  241
32  514
156a 694
30  241
158a 229

THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM H. QUINN, Appellant, *v.* THOMAS L. FEITNER and Others, Constituting the Board of Taxes and Assessments of the City of New York, Respondents.

*New York city — the duties of the assessors of the former city of Brooklyn ceased ipso facto, on January 1, 1898 — notice of removal need not be given to such assessors.*

An assessor of the city of Brooklyn in office prior to the 1st day of January, 1898, who was removed by the mayor on January 6, 1898, no person having been elected or appointed or qualifying as his successor, is not continued in office as part of the department of taxes and assessments of the new city of New York by the provisions of section 887 of "The Greater New York Charter" (Chap. 378, Laws of 1897), providing that "All persons performing similar duties in the several boroughs when this act takes effect shall, so far as the board (of taxes and assessments) shall deem them fit and competent, be preferred for the said appointments first to be made thereunder," and of section 1613, to the effect that "All officers in office when this act takes effect shall remain in office until their successors are respectively elected and appointed, and shall have qualified under the provisions of this act," as although the charter does not provide for successors *eo nomine,* to the assessors of the former city, it inaugurates a radically new system, devolving the powers formerly exercised by the department of assessors of the former city of Brooklyn upon several different boards and officers, leaving the former assessors without any functions, power, right or duty.

The duties of such an assessor ceased on the 1st day of January, 1898, *ipso facto,* of the charter taking effect on that day; and section 95 thereof, authorizing the mayor to remove within six months after he took office any public officer holding office by appointment from the mayor, did not render it necessary for the mayor to give notice in order to remove officials whose functions had terminated.

*Semble,* that section 95 confers upon the mayor the right to remove any officer appointed by any public official to whose powers he succeeded.

APPEAL by the relator, William H. Quinn, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 28th day of March, 1898, denying the relator's motion for a peremptory writ of mandamus to compel the respondents to prepare, certify and submit

to the comptroller of the city of New York a proper pay-roll certifying that the relator is entitled to be paid the sum of $291.61 for his salary for the month of January, 1898.

*Joseph A. Burr*, for the appellant.

*Almet F. Jenks* [*William J. Carr* with him on the brief], for the respondents.

GOODRICH, P. J.:

The moving affidavit of the relator shows that on March 15, 1897, he was appointed an assessor of the city of Brooklyn for a definite term, to expire on the 1st day of September, 1899. The salary attached to the office was $3,500 per annum.

On January 1, 1898, the mayor, under section 118 of "The Greater New York Charter" (Chap. 378, Laws of 1897), appointed Thomas L. Feitner president of the board of taxes and assessments of the city of New York, and the other respondents commissioners of taxes and assessments; these together constituted the department of taxes and assessments. On the same date certain other persons were appointed members of the board of assessors of the city.

Section 887 authorizes the board of taxes and assessments to appoint deputy tax commissioners, and section 888 provides as follows: "In making the appointments of the deputy tax commissioners the head of the department of taxes and assessments shall apportion such appointments, as nearly as may be, among persons residing in the several boroughs created by this act, according to the population of the several boroughs; and the persons performing similar duties in the several boroughs, when this act takes effect, shall, so far as the board shall deem them fit and competent, be preferred for the said appointments first to be made hereunder."

Section 1613 reads: "To guard against the inconvenience and effects that might arise from the changes in local government effected by this act, and to prevent an interregnum, and otherwise to carry out the purposes and provisions of this act, it is hereby enacted that until this act and its several provisions shall take effect all existing acts shall remain in force, and all officers in office when this act takes effect shall remain in office until their successors are

respectively elected and appointed and shall have qualified under the provisions of this act. And for the purposes aforesaid as well as for any other purpose necessary or proper to effectuate the scheme and objects of this act, and to carry into effect the powers granted by this act to the city of New York, the municipal assembly shall have power by ordinances to make from time to time all such provisions concerning the local rule and government of the city of New York as herein constituted, and each and all of its departments as it may find necessary or deem needful not inconsistent with the constitution and laws of the state and the express provisions of this act."

The charter also provides that all salaries shall be paid monthly, upon pay-rolls duly prepared and submitted to the comptroller. In pursuance of these provisions, the relator requested the respondents to submit a pay-roll for the month of January, 1898, showing the amount of salary which he was entitled to receive, and this the respondents refused to do.

The respondents allege that on January 1, 1898, the mayor removed from office as members of the board of assessors of the former city of Brooklyn all persons occupying the said position, excepting the relator, who was removed on January 6, 1898, and that no persons were elected or appointed or qualified as the successors of such board of assessors. The court denied the motion for a peremptory writ of mandamus, and from the order the relator appeals.

The relator contends that being an assessor of the city of Brooklyn, in office on the 1st day of January, 1898, he was by the charter continued in office as part of the department of taxes and assessments until his successor was elected or appointed, and had qualified under the provisions of the charter (§ 1613).

The questions which he raises are : " *First,* whether, on the first day of January, 1898, the successor in office of the relator as an assessor of the city of Brooklyn had been elected and had qualified; and, *second,* if not, whether the attempted removal by the mayor of the city of New York, on the 6th day of January, 1898, was efficient for that purpose."

It becomes necessary to state the powers, rights and duties of the department of assessors of the city of Brooklyn, under chapter 583 of the Laws of 1888. They may be summarized as follows : (1) To make assessment lists and rolls for local improvements. (2) To

assess real and personal property and to make an annual record of the property assessed by June first in each year. (3) To open such annual record for review, to hear complaints and to make corrections and determinations thereon. (4) To make up the corrected assessment rolls from the "annual record." (5) To apportion assessments where a gross assessment has been laid on one lot or parcel owned by different persons (§ 11). (6) To apportion assessments so that an owner of a divided interest in land may redeem from a sale based upon a gross assessment laid on land of which he was part owner (§ 12). (Tit. 10.)

The charter does not provide for successors, *eo nomine*, to the assessors of the former city, but inaugurates a radically new system. The question to be determined is whether or not all the powers, rights and duties which were imposed or conferred upon the relator as a member of the old board of assessors are not by the charter devolved upon some body or officer created thereby. Following the order of the summary above stated, section 943 of the Greater New York charter assigns all powers, rights and duties relative to assessment for local improvements to a body designated as a board of assessors. Sections 920 and 1042 devolve upon the comptroller all powers relative to the apportionment of the assessment of taxes or otherwise. Section 886 devolves upon the board of taxes and assessments of the city of New York all other rights, duties and powers theretofore imposed by law upon the department of assessment of the former city of Brooklyn.

Thus these several sections contain a complete devolution of all powers formerly exercised by the department of assessors of the old city of Brooklyn, either upon the board of assessors, or the comptroller, or the board of taxes and assessments of the new city, leaving the relator and his board without any function, power, right or duty. It was feared, however, by the framers of the charter that some contingency might arise which would occasion some interregnum before the appointment of new officers, and which would render action necessary, and it was for this purpose that section 1613 was enacted, but in the present case no such interregnum could occur, because under the charter there was the stated devolution of all powers formerly possessed by the relator upon some one or other of the departments or officers of the city of New York.

The provision of section 888, requiring the apportionment of the new deputy commissioners to the several boroughs, was not intended to limit the duties of such officers to the boroughs from which they were selected. It was intended only to secure proper representation of the several boroughs in the city, and it permits all officers thus appointed to perform their duties, not as residents of the borough, but as residents of the new city, and they may be assigned to perform duty in any part of the city.

No reason appears why the relator was excepted by the mayor from the removal of the members of the board of assessors on the 1st day of January, 1898, nor do I find any section which requires a notice of removal. The duties of these officers ceased on the 1st day of January, 1898, *ipso facto* of the charter taking effect on that day, and this was the evident intention of the charter.

It is true that section 95 authorizes the mayor to remove, within six months after he takes office, "any public officer holding office by appointment from the mayor, except * * * ." I do not think this section renders it necessary for the mayor to give notice to remove officials whose functions have terminated. It is broad enough to authorize the mayor to remove any officer appointed by any public official to whose powers he succeeded. It was also intended to confer upon a new mayor the right of removal of any officer appointed by his predecessor, so that the responsibility of the new administration should rest upon him and his appointees, or upon such of the appointees of old incumbents as he desired to retain in office.

It follows that the relator's term of office ended on that date, and that the order must be affirmed, with ten dollars costs and disbursements.

All concurred.

Order affirmed, with ten dollars costs and disbursements.