THE PEOPLE OF THE STATE OF NEW YORK ex rel. ANDREW D. BAIRD et al., Appellants, v. LEWIS NIXON et al., Respondents.

1. NEW YORK CITY — BRIDGE COMMISSIONERS — LOCAL OFFICERS.   The commissioners directed by chapter 789 of Laws of 1895, amended by chapter 612 of Laws of 1896, to be appointed by the mayors of the cities of New York and Brooklyn, for the construction and management of a bridge over the East River, were local municipal officers.

2. CONSOLIDATION OF CITIES.   The character of the bridge commissioners as local municipal officers, as distinguished from state officers, was not changed by the consolidation of the cities through the Greater New York charter (L. 1897, ch. 378).

3. MAYOR'S POWER OF REMOVAL.   Section 95 of the Greater New York charter confers upon the first mayor of the consolidated cities the power to remove the officers therein indicated, during the first six months of his term.

4. BRIDGE COMMISSIONER NOT WITHIN VETERANS' ACT.   The position of bridge commissioner is not a subordinate position contemplated by the Veterans' Act, and therefore is not within the protection of that act.

5. REMOVAL OF BRIDGE COMMISSIONERS BY MAYOR.   The first mayor of the greater city of New York had power to remove, during the first six months of his term, the bridge commissioners who had been appointed by the mayors of the late cities of New York and Brooklyn, and to appoint others in their place.

*People ex rel. Baird* v. *Nixon,* 32 App. Div. 513, affirmed.

(Argued January 12, 1899; decided February 28, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered August 12, 1898, sustaining exceptions by the defendants and setting aside a verdict directed by the court in favor of the plaintiffs and dismissing the complaint upon the merits.

The nature of the action and the facts, so far as material, are stated in the opinion.

*H. C. M. Ingraham* for appellants.   The mayor had no power to remove the relators.  (*People ex rel.* v. *Feitner,* 30 App. Div. 241 ; 156 N. Y. 694 ; *C. T. T. Co.* v. *K. C. R. R. Co.,* 154 N. Y. 495 ; *N. Y. & B. S. M. & L. Co.* v. *City of Brooklyn,* 71 N. Y. 580 ; 8 Hun, 37 ; *Mayor, etc.,* v. *T. Nat. Bank,* 111 N. Y. 446 ; *Russell* v. *Mayor, etc.,* 2 Den. 461 ; *People ex rel.* v. *Palmer,* 52 N. Y. 83 ; *People ex rel.* v. *Mayor, etc.,* 63 N. Y. 291 ; L. 1895, ch. 789 ; *People ex rel.* v. *Woodruff,* 32 N. Y. 361 ; *Jarvis* v. *Waterbury,* 84 Hun, 462 ; *Bergen* v. *Powell,* 94 N. Y. 591.)   The commissioners are agents of the state, and not municipal agents or officers. (*People ex rel.* v. *Flagg,* 46 N. Y. 401 ; *People ex rel.* v. *Kelly,* 76 N. Y. 475 ; Dillon on Mun. Corp. § 74 ; *People ex rel.* v. *Draper,* 15 N. Y. 568 ; *Matter of Comrs. of Central Park,* 35 How. Pr. 255 ; *Mayor, etc.,* v. *T. N. Bank,* 111 N. Y. 446 ; *People ex rel.* v. *Dwyer,* 90 N. Y. 402 ; *Maximilian*

v. *Mayor, etc.*, 62 N. Y. 160 ; *Ham* v. *Mayor, etc.*, 70 N. Y. 459 ; *N. Y. & B. S. M. & L. Co.* v. *City of Brooklyn*, 71 N. Y. 580 ; *People ex rel.* v. *Wright*, 150 N. Y. 444.) The action of the mayor in regard to the commissioners is void, because the relator Baird was a veteran. (L. 1896, ch. 821 ; *People ex rel.* v. *Morton*, 148 N. Y. 156 ; *People ex rel.* v. *Board of Health*, 15 App. Div. 272 ; 153 N. Y. 513 ; *People ex rel.* v. *Police Comrs.*, 155 N. Y. 40.) There was no vacancy in office when the defendants were appointed by the mayor. (*People* v. *Cook*, 8 N. Y. 67 ; *Foot* v. *Stiles*, 57 N. Y. 399 ; *Matter of Kendall*, 85 N. Y. 302 ; *People ex rel.* v. *Crissey*, 91 N. Y. 622 ; *Horton* v. *Parsons*, 37 Hun, 42 ; *Matter of N. Y. & L. I. B. Co.*, 148 N. Y. 540.) Even if the relators' title to office has not been established, the defendants must be ousted. (*People ex rel.* v. *Thacher*, 55 N. Y. 530 ; *People ex rel.* v. *Hall*, 80 N. Y. 117.)

*John Whalen, Corporation Counsel* ( *William C. Trull* and *George Hill*, of counsel), for respondents. The mayor had power to remove relators under the authority conferred upon him by section 95 of the charter of " The City of New York." (*People ex rel.* v. *Nostrand*, 46 N. Y. 375 ; *Matter of Ryers*, 72 N. Y. 1 ; *People ex rel.* v. *Comptroller*, 20 Wend. 595 ; *People ex rel.* v. *Common Council*, 77 N. Y. 508 ; *Rowland* v. *Mayor*, *etc.*, 83 N. Y. 376 ; *Robinson* v. *Chamberlain*, 34 N. Y. 398 ; *People ex rel.* v. *Feitner*, 30 App. Div. 241 ; *Matter of Carey* v. *Wurster*, 31 App. Div. 553 ; *People ex rel.* v. *Van Wyck*, 54 N. Y. Supp. 675 ; *Walsh* v. *Trustees*, *etc.*, 96 N. Y. 437.) The mayor had power to remove the relators under the Constitution. (Const. N. Y. art. 10, § 3 ; *People ex rel.* v. *Comptroller*, 20 Wend. 665 ; *People ex rel.* v. *Robb*, 126 N. Y. 180 ; *Ex parte Hennen*, 13 Pet. 230 ; *People ex rel.* v. *Fire Comrs.*, 73 N. Y. 437 ; *People ex rel.* v. *Lathrop*, 142 N. Y. 113 ; *Robinson* v. *Chamberlain*, 34 N. Y. 398 ; *People ex rel.* v. *Mayor etc.*, 149 N. Y. 215 ; *People* v. *Conover*, 17 N. Y. 65 ; *Devoy* v. *Mayor, etc.*, 36 N. Y. 449.) The claim of the relator Baird, that he could not be removed " except for incompetency or

misconduct shown after a hearing, upon due notice, because he was a veteran," cannot be sustained. (L. 1896, ch. 821, § 1; *People ex rel.* v. *England,* 16 App. Div. 97; *People ex rel.* v. *Gray,* 32 App. Div. 464; *People ex rel.* v. *Morton,* 148 N. Y. 156; *Matter of Ostrander,* 12 Misc. Rep. 476; 146 N. Y. 404; *People ex rel.* v. *Palmer,* 152 N. Y. 217; *Chittenden* v. *Wurster,* 152 N. Y. 345; *People ex rel.* v. *Lyman,* 157 N. Y. 368; *People ex rel.* v. *Lathrop,* 142 N. Y. 113; *People ex rel.* v. *Van Wyck,* 33 App. Div. 318.) The Veteran Law, if applicable to the office held by the relator Baird, is unconstitutional. (Const. N. Y. art. 10, § 3; *People* v. *Hill,* 7 Cal. 97; *Smith* v. *Brown,* 59 Cal. 672; *People* v. *Freese,* 83 Cal. 456.) The office held by each of the relators was vacant at the date of the appointment of the respondents, if the office so held was other than a municipal office. (L. 1892, ch. 681, §§ 10–20; *In re B., W. & N. R. Co.,* 72 N. Y. 245; *B. S. T. Co.* v. *City of Brooklyn,* 78 N. Y. 524.)

Bartlett, J. This action is in the nature of a quo warranto, to oust the defendants from and restore the relators to the office of bridge commissioners, held by them prior to their removal by the mayor of the city of New York, on January 19, 1898.

The only question presented upon this appeal is as to the power of the mayor of the city of New York to remove the relators and appoint the defendants.

The power of the mayor to make this removal and appointment is based mainly on section ninety-five of the charter of Greater New York, which reads: "At any time within six months after the commencement of his term of office the mayor, elected for a full term, may, whenever in his judgment the public interests shall so require, remove from office any public officer holding office by appointment from the mayor, except members of the board of education and school boards, and except also judicial officers for whose removal other provision is made by the Constitution."

In order to clearly apprehend the question presented it is

necessary to examine with some care the acts of the legislature under which the bridge commissioners were appointed and from which they derive their powers.

The first act is chapter 789 of the Laws of 1895, entitled "An act to authorize the construction of a bridge over the East river between the cities of New York and Brooklyn." This act provides for the construction of a suspension bridge over the East river, between the cities of New York and Brooklyn, from at or near the foot of Broadway, in the city of Brooklyn, to at or near the foot of Grand street, in the city of New York.

The first section provides that immediately after the passage of the act the mayor of the city of New York shall appoint three persons, and the mayor of the city of Brooklyn shall appoint three persons, who, with the mayors of said cities, respectively, shall constitute a commission for the purposes of the act.

Section three provides for the adoption of plans, etc., necessary and convenient to establish the objects contemplated. The commissioners may enter upon such real estate, sites and locations selected, and take possession of the same in the joint names of the city of New York and the city of Brooklyn.

The act further provides that the title to all such real estate, or interest therein shall be taken to and in the name of the trustees of the New York and Brooklyn Bridge.

Sections three, four and five contain a variety of details not necessary to be considered at this time.

Section six enacts that the cost of construction and the compensation of the commissioners shall be borne in equal shares by the city of New York and the city of Brooklyn; also that the commissioners, except the mayors of the respective cities, shall receive for their services three thousand dollars per annum.

It is to be observed in this connection that the mayors of the two cities, under the provisions of section one, are excluded from the privilege of holding the offices of secretary and treasurer. This provision, taken in connection with the one just

29

quoted in reference to the mayors not being entitled to salaries, would seem to indicate that their presence upon the commission is purely *ex officio.*

Section seven provides that when the work shall be completed, the accounts filed and all payments made, the bridge shall become a public highway for the purpose of rendering travel between the city of New York and the city of Brooklyn safe and certain at all times, and the care, management and control thereof shall be vested in the trustees of the New York and Brooklyn Bridge, who shall possess in relation thereto like powers as are vested in them in relation to the New York and Brooklyn Bridge.

The following year the legislature amended this law in several important particulars by chapter 612 of the Laws of 1896.

By section one it amended section three of the act of 1895, by repealing the provision that title to real estate or interest therein should be taken in the name of the trustees of the New York and Brooklyn Bridge, and providing that such title be taken to and in the corporate name of the cities of New York and Brooklyn as joint tenants.

Section four of the act amended section seven of the act of 1895, by repealing the provision that the bridge when completed should pass under the management and control of the trustees of the New York and Brooklyn Bridge, and providing that the care, management and control thereof shall be vested in the commissioners and their successors, who shall possess in relation thereto like powers as are at the time of the passage of this act vested in the trustees of the New York and Brooklyn Bridge, unless the legislature shall otherwise provide therefor.

It will be observed that, under the act of 1895, the commissioners, upon the completion of their work, were to turn the bridge over to an independent management and control, while under the act of 1896 they are to continue in the care and management of the completed structure.

In the one case their tenure of office was limited to the

completion of the bridge, while in the other its duration is indefinite.

We have here a commission that is indeed created by the legislature, and two of its members, the mayors of the respective cities, are named in the act, but the balance of the board are appointed, three each, by the mayors respectively, for the discharge of duties clearly pertaining to a city purpose and the performance of functions limited in their execution to a portion only of the state.

The fact that on the first of January, 1898, the charter of Greater New York went into effect and the municipal corporation known as the city of Brooklyn ceased to exist, does not alter the local situation. The proposed bridge structure, instead of connecting two independent municipalities, was on and after that date destined to become a public highway between different portions of one municipality known as the city of New York, but the scheme of erecting the bridge was none the less a city purpose, and the commissioners to carry the legislative provisions into effect were clearly local officials under article one, section two, of the Public Officers' Law, where state and local officers are thus defined :

" The term state officer includes every officer for whom all the electors of the state are entitled to vote, * * * and every officer, appointed by one or more state officers, or by the legislature, and authorized to exercise his official functions throughout the entire state, or without limitation to any political subdivision of the state, except United States senators, members of Congress, and electors for president and vice-president of the United States. The term local officer includes every other officer who is elected by the electors of a portion only of the state, every officer of a political subdivision or municipal corporation of the state, and every officer limited in the execution of his official functions to a portion only of the state. * * * "

The contention of the learned counsel for the relators is that the authority given by the act of 1895 to the mayors to appoint commissioners was given to them as state agents and not as

city officers, and was to be exercised by them immediately and to be exhausted as soon as exercised. Also, that whatever power was given to these mayors by the amending act of 1896 was to fill vacancies and not to make vacancies, and if such power has survived the consolidation of the cities, it has passed under the Public Officers' Law (Chapter 681, Laws of 1892, § 6) to the governor of the state, and not either by statute or implication of law to the mayor of the new city.

The learned counsel for the relators has argued these propositions at great length, both at the bar and in an able and interesting brief, but we are so convinced that these commissioners are municipal officers, under the provisions of the statutes already quoted, that we do not feel called upon to deal with his argument in detail.

There are many minor provisions of the acts of 1895 and 1896 that render this conclusion inevitable.

We have already pointed out that the cities took title to the real estate and paid the salaries of the commissioners, but there are further provisions that are pertinent. The commissioners must present a monthly statement of receipts and expenditures to the mayors; they are to file all plans with the commissioner of public works of the two cities respectively; the commissioners of the land office of the state are authorized to convey to the city such land under water as is needed wherever it is property of the state; in the purchase of a charter of another corporation, necessary in the prosecution of the work, it must be with the express consent of the mayors and comptrollers, and the purchase money is to be provided by the two cities; the cost of the bridge is a city charge and no money can be paid on account thereof except as the mayors approve.

There are many other minor provisions that might be referred to in these and other acts, not directly involved in this litigation, that show beyond all question the municipal character of these commissioners.

The counsel for the relators argues that whatever authority to remove officers may be contained in the charter of Greater

New York (§ 95), it does not refer to the first mayor of the consolidated cities, but only to appointees of the first mayor, who may be removed by his successor in office.

We are unable to adopt his view, as this court has already decided that the section in question does confer upon the mayor of the city of New York the power to remove the officers therein indicated during the first six months of his term. (*People ex rel. Quinn* v. *Feitner*, 30 App. Div. 241 ; affirmed on opinion below, 156 N. Y. 694; *People ex rel. John W. Jacobus* v. *Robert A. Van Wyck, as Mayor of New York City*, 157 N. Y. 495.)

In the *Feitner* case the relator, removed by the mayor, was an assessor appointed by the mayor of the city of Brooklyn.

In the *Jacobus* case the relator was an assessor appointed by the mayor of the former city of New York.

These removals were both sustained under the provisions of section ninety-five of the charter of Greater New York.

The counsel for the relators further insists that the action of the mayor in regard to the commissioners is void, because the relator Baird was a veteran of the late civil war.

This point is also disposed of by the recent decisions of this court.

In *People ex rel. Fonda* v. *Morton* (148 N. Y. 156), Chief Judge ANDREWS said at page 162, commenting on the Veterans' Act : " It is apparent that the legislation ·culminating in the act of 1894, has nothing primarily to do with what is called the civil service system. It was intended to create a privileged class entitled to preferential employment in subordinate positions in the public service.  *  *  *

" The act applies to employees of every grade in the public service or on the public works of the state and the cities, towns and villages thereof."

The position of bridge commissioners is not a subordinate position contemplated by the Veterans' Act. (*People ex rel. Jacobus* v. *Van Wyck, as Mayor of New York City*, 157 N. Y. 495.)

If a further authority is needed outside of the very explicit

provisions of the acts of 1895 and 1896, as to the duties and functions of the bridge commissioners being purely municipal in character, it is to be found in cases construing the powers and liabilities of the trustees of the New York and Brooklyn Bridge.

In the case of *Walsh* v. *Trustees of the New York & Brooklyn Bridge* (96 N. Y. 427) the plaintiff sought to recover damages for personal injuries sustained by him. Upon a demurrer to the complaint, this court held that after the legislation which extinguished the old bridge corporation and vested all its property in the two cities, the board of trustees were merely agents for, and representatives of, the two cities, and as such they were entitled to the immunities of public agents, and, therefore, an action would not lie against them for personal injuries. The plaintiff Walsh afterwards recovered a verdict in another action brought against the two cities. (107 N. Y. 220.)

In the case at bar the relators occupy a position not to be distinguished from the present trustees of the New York and Brooklyn Bridge. (See, also, as to the bridge being a city purpose, *People ex rel. Murphy* v. *Kelly*, 76 N. Y. 475.)

In the view that we entertain of this case it is unnecessary to examine the further point taken by the defendants' counsel, that the mayor has power to remove the relators under article 10, § 3, of the Constitution, which reads: " When the duration of any office is not provided by this Constitution, it may be declared by law, and if not so declared, such office shall be held during the pleasure of the authority making the appointment."

Counsel have submitted an elaborate argument on this point, but we prefer to rest this decision upon the powers conferred on the mayor of the city of New York by section 95 of the charter of the greater city.

The judgment of the Appellate Division should be affirmed, with costs.

All concur.

Judgment affirmed.