In the Matter of the UNION BANK OF BROOKLYN, in Liquidation.

In the Matter of the Application of EUGENE LAMB RICHARDS, as Superintendent of Banks of the State of New York, for Leave to Declare and Pay a Dividend to the Creditors of the UNION BANK OF BROOKLYN.

EUGENE LAMB RICHARDS, as Superintendent of Banks, Appellant; METROPOLITAN TRUST COMPANY and Others, Respondents.

Second Department, February 16, 1917.

Banks and banking — petition by Superintendent of Banks for authority to pay dividend — power of court to also order sale of assets.

Upon a petition by the Superintendent of Banks for an order authorizing him to pay a dividend to creditors of a bank, the affairs of which he was liquidating pursuant to the Banking Law, it was error for the court, under the circumstances, to also direct the Superintendent to sell all of the assets of the bank on or before a certain date and to further direct the immediate foreclosure of all mortgages.

APPEAL by Eugene Lamb Richards, as Superintendent of Banks, from part of an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 3d day of August, 1916.

*Joseph G. Deane,* for the State Superintendent of Banks, appellant.

*Louis Goldstein,* for the Depositors' Committee of the Union Bank of Brooklyn.

JENKS, P. J.:

The Superintendent of Banks of the State of New York, under the authority of the Banking Law, is liquidating the Union Bank of Brooklyn, an insolvent banking corporation. In April, 1916, he applied at Special Term upon his petition and the affidavit of the Special Deputy Superintendent in charge of the liquidation for an order authorizing him to pay a dividend of 5 per cent to creditors. Notice was given to the Union Bank and to three alleged creditors whose claims were disputed.

Second Department, February, 1917.          [Vol. 176.

The moving papers showed the amount of claims presented and allowed, in summary form, and that the time to present claims had expired. They contained a statement of the claims rejected, of the reasons therefor, and of the amount thereof; of facts as to claims possibly entitled to preference; of an amount of cash on hand sufficient to pay a 5 per cent dividend with safety, and a statement that the value of the unliquidated assets was sufficient for all possible expenses and for demands of creditors whose claims had been rejected. The court sometime thereafter handed down a memorandum that under the Banking Law the duty of determining the amount of the dividend was on the court, but there was not sufficient evidence before it to determine whether the proposed dividend was a proper one to be authorized, and it, therefore, ordered a public hearing, so that all parties in interest could "present further evidence to enable the court to determine the proper amount of the dividend to be paid and the persons to whom and the amounts in which it should be paid." At the time appointed the court directed the Superintendent to take the inventory of the assets of the bank filed pursuant to law by appellant's predecessor, and to show what has become of each item, and to furnish a statement of all payments made from the time the bank had been taken over by the Banking Department. Counsel for the Superintendent then moved for leave to file a statement of account of the entire liquidation upon notice to all persons interested, so that an effective decree could be had, and that, in the meantime the court take evidence on the propriety of the payment of a 5 per cent dividend. The court refused to grant the motion for an accounting or to take the said evidence. Later, the counsel, without success, requested the court to make a written order embodying its various oral directions. I cannot glean from the record that there was any dispute from any one that the proposed dividend could not then be paid. Such criticism as appeared was rather confined to the contention that there should have been more activity in the liquidation.

The counsel thereafter furnished a very long account to the court. No request was made for testimony, and no testimony was taken. After an interval, the court stated at a hearing that the Superintendent had complied with all the require-

ments of the court and closed the proceeding.  Subsequently the court handed down an elaborate opinion (96 Misc. Rep. 299) that granted the motion for leave to pay a 5 per cent dividend, but also directed the Superintendent to sell all of the assets of the bank on or before December 7, 1916, with specific directions as to the places of any auction sales.  The order also directed the immediate foreclosure of all mortgages.

The order consists of two separate directions.  The first grants the motion of the Superintendent and authorizes the payment of a 5 per cent dividend.  The second consists of those things that the court, " upon its own motion," orders, namely, the sale of all of the assets of the bank and the foreclosures. This appeal is from those parts of the order exclusive of that whereby the dividend is authorized.  The opinion shows that the court, in view of its construction of section 78 of the Banking Law, that the court was to determine judicially the amount of the dividend, thought it necessary to ascertain what disposition had been made of the assets and whether disbursements and other dispositions had legally been made.  This view, the court says, was opposed to the contentions of the Superintendent, namely, either that the court should grant the application if satisfied that the Superintendent had then in his hands funds adequate to the payment of a dividend as proposed of 5 per cent, or that the court should halt the present proceedings and require the starting of a general accounting covering all of the proceedings of the Superintendent and of his predecessors from April 4, 1910, to date, and cite therein all persons having any interest in the questions involved in such accounting, including the Superintendent's predecessor. And the court in comment says: "Neither of these suggestions was adopted by the Court" — not the first, for the reason that such a direction would not discharge the duty resting upon the court, as theretofore pointed out in a previous memorandum — not the second, for the reason that the court deemed the delay in approving the payment of the dividend until after such accounting would be avoided by directing the Superintendent to furnish the court detailed statements of the receipts and payments of moneys and the administration of the assets during liquidation.  Other considerations were that

such direction, unqualified with an order granting the application to pay a dividend, might be "claimed" or "construed" as an approval or confirmation by the court of some of the acts of the Superintendents, contrary to the intention of the court, and, on the other hand, if such direction were given, accompanied by a denial of an order for a dividend, it might work hardship and delay. The court then says that the statements of account furnished to the court at its request "establish * * * a fundamental misapprehension by the Superintendent of Banks of the principles which, under the law * * * should govern the liquidation of an insolvent bank;" thereupon the court proceeds to discuss at length the relations of the Superintendent to an insolvent institution, its creditors and the court. The court says that the statute treats the position and office of the Superintendent "in two distinct and unrelated aspects." In the first, the Superintendent is an administrative State officer, exercising pursuant to statute the supervisory and visitorial powers in the licensing, regulation and closing of the institutions. In exercise of such power, says the court, his discretion is not the subject of judicial review, except in the few instances expressly pointed out by statute. This status continues so long as the institution is solvent. But when the Superintendent determines the institution is no longer solvent, and takes possession for liquidation, "then there springs up forthwith a new and different status," and "there devolve upon him entirely new functions and duties different from those which he had previously discharged." The court thus states the functions and the duties: "He instantly assumes the position of a 'receiver,' 'a conservator,' 'a custodian and liquidator,' a 'mere conservator and liquidator' as it has been variously denominated by the courts. From that moment, except as the statute expressly gives him power to do certain special things, he has no general power over the assets of the bank. He becomes the arm of this court, which thenceforth is in ultimate control in its judicial capacity and not in any administrative sense, and he does not possess nor can he exercise any judgment or discretion on his own account. He must apply to this court in the appropriate judicial district for instructions before he acts. In other

words, he possesses and can exercise just the same powers, discretion and control, and no more, as, before the present system was inaugurated, a receiver of such an institution, who had been appointed by the court, would have possessed and exercised."

Inasmuch as the court expressly declined to extend the application or proceeding into an accounting, as it called for the information accorded in the proceeding for the authorization of a dividend of 5 per cent, and as the sales ordered by the court were ordered to be held some months after the dividend immediately authorized, payable "out of the funds remaining in his [the Superintendent's] hands," and when we consider the theory advanced by the court as to its power over the Superintendent as a receiver, it seems plain that the parts of the order appealed from were made by the court *sua sponte*, as if to its receiver. The view is strengthened by the fact that, while the order declares that the dividend is authorized upon the motion of the petitioner's attorney, the order declares as to the other parts, "And it is by the court upon its own motion, Further ordered."

I think that the court overlooked a distinction between the Superintendent as a liquidator, and a receiver appointed by the court, that excluded the former from the power of the court exercised in this instance. The former common-law right of banking is now a franchise derived from the Legislature (*Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Ch. 377; *People* v. *Utica Ins. Co.*, 15 Johns. 378), and the Superintendent is the head of the department for the State regulation of such franchise. He is not a part of the judicial branch of the government. He does not take his office nor derive any of his original powers from it. He is of the administrative branch of the government, appointed by the Governor and confirmed by the Senate. (Banking Law, § 10.) He is a State officer. (Public Officers Law [Consol. Laws, chap. 47; Laws of 1909, chap. 51], § 2; *People ex rel. Baird* v. *Nixon*, 158 N. Y. 221.) And as such officer he is expressly clothed by the Legislature with this power of liquidation. (Banking Law, § 69.) His possession is not that of the court. The statute declares that he may forthwith take possession of

Second Department, February, 1917.          [Vol. 176.

the business and property of a banking corporation that has violated its charter or any law; is conducting its business in an unauthorized or unsafe manner; is in an unsound or unsafe condition to transact business; has an impairment of its capital; has suspended payment of its obligations, or has neglected or refused to comply with the terms of a duly issued order of the Superintendent. (Id. § 57.) When he "shall have duly taken possession of such corporation, * * * he may hold such possession until its affairs are finally liquidated by him." (Id. § 58.) He "is authorized, upon taking possession of the property and business of such corporation * * * to liquidate the affairs thereof and to do all acts and to make such expenditures as in his judgment are necessary to conserve its assets and business." (Id. § 69.) "The moneys collected by the Superintendent shall be from time to time deposited in one or more State banks, savings banks or trust companies." (Id. § 70.) As to his further duties and powers, see section 79 of the Banking Law. Thus it appears that as Superintendent he takes possession, holds possession until final liquidation by him, and is authorized to liquidate, outside of any judicial proceedings. The fact that he must receive the sanction of the court before certain steps in his procedure are effective (e. g., §§ 63, 69, 74, 78, 79) does not imply that the liquidation itself is judicial.

A receiver is the creature of the court. He is often termed the "hand of the court." He is described as if a sheriff of the Chancery Court. (High Receivers [4th ed.], § 2; Matter of Merchants Ins. Co., 3 Biss. 162, 165.) The court that made him can unmake him and take the property from him. (New York & W. U. Tel. Co. v. Jewett, 115 N. Y. 168.) The property is in his possession as the possession of the court, in custodia legis. (Atlantic Trust Co. v. Chapman, 208 U. S. 371; Merritt v. Lyon, 16 Wend. 421; Matter of Christian Jensen Co., 128 N. Y. 553; Matter of Tyler, 149 U. S. 164.)

It is quite true that the courts have in discussion compared the duties of the Superintendent as a liquidator to those of a receiver. (Matter of Union Bank, 204 N. Y. 316; Van Tuyl v. Scharmann, 208 id. 62.) Naturally; for each in winding up a corporation performs the same kind of duties. But the statute does not provide that the Superintendent, by virtue of

his office or by virtue of the statutory duties cast upon him, shall be a receiver or shall be regarded as such in the eye of the law. This the Legislature might have done as it did do, *e. g.*, by section 2 of chapter 3 of the Laws of 1836. And I am not aware that any court has *decided* that the Superintendent, in the exercise of his statutory duties as a liquidator, is but a receiver and subject to any court as a receiver is subject to the court that made him.

In such a matter as a sale ordered by the court, the court naturally acts through some administrative agent. Conceding that the Special Term had the jurisdiction to order this sale and had thus directed *its receiver*, then it would be but the action of the court itself over assets *in custodia legis*. But when the court undertook thus to order the Superintendent as a liquidator, it reached out to direct a State officer in the discharge of statutory duties, involving discretion conferred upon him, not the court, when he and not the court was in custody of the assets. (Banking Law, § 70.)

This case does not present even the question of the power of the courts to require action by the Superintendent in his work of liquidation, but the question of the power of the court, as a court, *sua sponte* to order the Superintendent in his liquidation to sell all of the assets of the corporation at a specific time and at specific places. The court in effect has said to the Superintendent, you are but my receiver, and as such I direct you to sell all of the property of this corporation at a time and place now determined by me.

As I have said, the liquidation contemplated and authorized by the Banking Law is not the result of any action or proceeding in court. Liquidation does not necessarily require nor imply judicial proceedings. The appointment of an officer to act in liquidation outside of judicial proceedings or apart from the judicial branch of the government, is not open to objection as vesting him with judicial power. (*Title Guaranty Co.* v. *Allen*, 240 U. S. 136; *Bushnell* v. *Leland*, 164 id. 684; *Matter of Chetwood*, 165 id. 458. See, too, *Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.*, 191 N. Y. 123.) The statute naturally contemplates, in a liquidation, the propriety or necessity of a sale or other disposition of the real or per-

sonal property. But it does not provide that the court, in course of these liquidation proceedings, may direct or order, at its own instance, a sale or disposition of the property. The statute reads: "The Superintendent is authorized, upon taking possession of the property and business of such corporation * * * to liquidate the affairs thereof *and to do all acts and to make such expenditures as in his judgment are necessary to conserve its assets and business.*" Then follow certain specified acts, and among them the provision: "He * * * upon such terms as the court shall direct, may sell or otherwise dispose of all or any of the real and personal property of such corporation." It is the Superintendent who is authorized, not the court, to sell or otherwise dispose of. He cannot sell or dispose of absolutely, but if he purpose to sell or dispose of, the terms of such sale or disposition must be directed by the court. (Banking Law, § 69.) "Sell" or "otherwise dispose of" does not limit the authority to a sale (*Phelps* v. *Harris,* 101 U. S. 380), but contemplates a disposition that shall be "equally efficient" (*Ham* v. *State of Missouri,* 59 U. S. [18 How.] 133) in a liquidation.

The court made this drastic command upon accounts required by it and submitted to it in the proceedings for authority to pay this dividend of 5 per cent, and one proposed to be paid only out of cash in hand — not as the result of the final winding up of the corporation. There was no application for any sale, no action or proceeding that involved or required or justified an adjudication therefor — not even a proceeding to settle accounts. In *Shriver's Lessee* v. *Lynn* (2 How. [U. S.] 60) the court say: "No court, however great may be its dignity, can arrogate to itself the power of disposing of real estate without the forms of law. It must obtain jurisdiction of the thing in a legal mode. A decree without notice, would be treated as a nullity. And so must a sale of land be treated, which has been made without an order or decree of the court, though it may have ratified the sale. The statute under which the proceeding was had requires a decree; at least such has been its uniform construction."

The court found, on examination of the accounts, that the different Superintendents had expended in the six years of

their administration, in connection with the real estate, $2,013,426.54, while they had received therefrom $1,373,276.68. The court then said that it had given as great attention as was possible, in the time available, to the question whether any substantial part of the deficit could be recovered, and continued: "I have secured appraisals upon many of the parcels of real property which are mentioned in the accounts, and am free to say that the equity therein of the Union Bank is, in my judgment, of doubtful value." But we have not before us any proof, aside from the accounts filed — not even of the appraisals mentioned by the court.

I am not prepared to say, and it is not necessary to say, that a case or proceeding could not arise in the Supreme Court that presented for adjudication and correction the past or present or future conduct of this liquidation. To say this would be to import that the Superintendent is above or beyond the judicial branch of the government. But I am of opinion that the court did not have the jurisdiction to make the part of the order appealed from upon a petition for a dividend, or upon the theory that the Superintendent was but its receiver and that it was in control of the assets of this insolvent bank.

In *Van Tuyl* v. *Scharmann* (208 N. Y. at 63) the court, per HOGAN, J., say: "The scheme of the statute was to provide a procedure for the liquidation of delinquent corporations through a department of the State for the benefit of creditors, which would be economic and speedy. The same general plan prevails in the liquidation of national banks by the Comptroller of the Currency." The learned Special Term in its opinion (96 Misc. Rep. 320, 321) quotes, as instructive as to the legislative change in functions of the Superintendent, from messages of Governors Odell and Higgins, and in the part quoted from Governor Odell are these words, referring to banks and insurance companies: "They should be placed entirely under the control of the State Banking and Insurance Departments, and our laws should be made to conform to the Federal statutes relating to National Banks." Comparison of 13 United States Statutes at Large (pp. 114, 115, chap. 106, § 47 *et seq.;* now U. S. R. S. § 5227 *et seq.*) with our Banking Law indicates that the Executive's recommendations were adopted.

Second Department, February, 1917.     [Vol. 176.

It has been held that a receiver appointed by the Comptroller of the Currency was not the officer of any court, but the agent or officer of the United States, and in consideration of the statute as to sales of real and personal property, that is almost identical in terms with our State statute, in that the receiver must procure the order of the court for a sale on such terms as the court may direct, that a petition to the court for such sale does not make him an officer of the court nor place the assets within its control as if a receiver appointed by the court. (*Matter of Chetwood*, 165 U. S. 457; High Receivers [4th ed.], 445.) It seems to me that, by analogy, the Superintendent is not a receiver of the court perforce of the requirement as to sales of the assets, and that the court is not empowered thereby to order a sale upon its own initiative.

It is true that the United States statutes do not require the authorization by the court of a *dividend*, but I have already pointed out that the order for the sale was not made as incidental to the petition for such authority.

In *Matter of Earle* (92 Fed. Rep. 22) it was held that courts are not vested with any general or supervisory power over the liquidation of insolvent national banks by such a receiver acting under the direction of the Comptroller of the Currency.

See, generally, as to the power of the court over securities or assets, *Ruggles* v. *Chapman* (59 N. Y. 165); *People ex rel. Ruggles* v. *Chapman* (64 id. 557); *Matter of Home Provident Safety Fund Assn.* (129 id. 288).

I appreciate and I commend the labor, study and care devoted to this matter in a praiseworthy desire to speed this long-continued liquidation to an end. But if a court is convinced of the supineness of an administrative State officer in a matter committed to him by statute, it cannot assume his functions and strip him of his discretion on the theory that the court may do what he has left undone to the disapproval of the court. The fact that the Superintendent, when he sells the real and personal property of this corporation, must sell them "upon such terms as the court shall direct," does not in itself empower the court at its own instance to sell them forthwith, or at a specified time, if it is convinced that they should be sold. It is not for the court to set itself above the judgment and discre-

tion of administrative officers to whom the law commits a decision, for thereby the court but confronts its opinion with his opinion. (*Morgan* v. *City of Binghamton*, 102 N. Y. 504.) And in the case at bar the opinion of the court is not only opposed to that of the officer, but to that of a committee of depositors heard on this appeal. Such a committee naturally would not oppose any step that would, in its opinion, make for the relief of the depositors.

The order, in so far as appealed from, is reversed.

THOMAS, J., concurred; MILLS, J., read to concur in the result; PUTNAM, J., concurred in result in separate opinion; CARR, J., not voting.

MILLS, J. (concurring):

I concur in the result, upon the sole ground, however, that the Special Term took no evidence upon the subject of the propriety of an immediate sale, and that such subject was not involved in the proceeding pending before it. The statute, sections 57–79 of the Banking Law (Consol. Laws, chap. 2; Laws of 1914, chap. 369), makes the order of the Supreme Court an indispensable condition for the exercise by the Superintendent of his chief powers in such liquidation, namely, (a) to compound bad or doubtful debts; (b) to sell real or personal property; (c) to fix or at least pay the compensation of his counsel and the other expenses of supervision and liquidation; (d) to pay dividends, and (e) to make final distribution among the stockholders of the surplus, if any. As to the exercise of such powers, it is not, to my mind, inept to compare his position with that of a receiver appointed by the court. I think, in the exercise of those powers, he is by necessary implication from the statutes made subject to the direction of the court.

The comments made by the learned justice at Special Term, as to the delay in the conduct of the liquidation and the great expenses thereof, seem, at least upon the face of the matters disclosed by the record, to be well warranted; but I think no adjudication thereon should be made without full hearing of all parties interested, or opportunity given to them for such hearing.

PUTNAM, J. (concurring):

The Legislature in 1908, confronted with the fees and system of allowances for court receivers and their counsel, determined to confer the duty of a liquidator on a public salaried official.* It might have devolved this work on the Attorney-General. Such liquidation is a duty quite distinct from the normal official character of the Superintendent of Banks, who as to organization, conduct of banking officials and supervision by means of reports and examination of such institutions, remains a public official answerable to the Legislature. But in winding up a banking corporation he is not left independent of judicial control. He compounds debts and sells the bank's real and personal property by order and direction of the court. The slight verbal changes in section 19 of the Banking Law of 1909 (Consol. Laws, chap. 2 [Laws of 1909, chap. 10], as amd. by Laws of 1910, chap. 452), as reproduced in section 69 of the present Banking Law (Consol. Laws, chap. 2; Laws of 1914, chap. 369), only emphasize the court's power to prescribe the terms and conditions of such sales. (See *Matter of Superintendent of Banks*, 207 N. Y. 11.) Even payments in the course of administration, like those to his own deputies, counsel and employees, and his expenses of supervision and liquidation, must be subject to the approval of the Supreme Court in the judicial district in which was the principal office of such corporation. (§ 63.)

It is the court which orders payment of dividends, and makes provision for unproved or unclaimed deposits. (§ 78.)

Within ten days after the Banking Department takes possession the aggrieved bank can come to the court, which may cite the Superintendent before it, and may stop his proceedings and direct him to turn back the bank's property. (§ 60.) As Mr. Justice WOODWARD succinctly said: "All doubtful questions are left for the court to dispose of, or at least to supervise." (*Matter of Union Bank, No. 2*, 147 App. Div. 593, 619.) Regarding sales of assets, the Court of Chancery, and later the Supreme Court, had the responsible direction in banking liquidations. The Laws of 1846 (Chap. 97, § 2) provided: "It

* See Laws of 1908, chap. 143, amdg. Banking Law (Gen. Laws, chap. 37; Laws of 1892, chap. 689), § 18.— [REP.

shall be lawful for the receiver of any such bank who shall have omitted to sell the real estate of any such bank within the time heretofore limited for that purpose, to sell such real estate under the advice and direction of the chancellor at public auction upon such notice as the chancellor shall require."

Under the Laws of 1849 (Chap. 226, § 12) the receiver of an insolvent bank had to sell at auction the effects and demands of such corporation, "which any justice of the Supreme Court shall authorise to be sold." He had to declare a cash dividend within ninety days from his appointment "unless such time be enlarged by a justice of the Supreme Court, which may be done for a period not exceeding ninety days."

In *Matter of Hollister Bank* (23 N. Y. 513) the power to delay sales by bank receivers was considered. Judge SELDEN held that under the act of 1849, before a receiver could proceed against stockholders, "his report must show, either that all the assets not in litigation have been converted by sale or otherwise, or that *a judge has deemed it expedient* that a sale of the whole or some portions of the demands due to the bank should be postponed beyond the period within which a dividend must be made." (Pp. 513, 514.)

The Federal Comptroller of the Currency has quite different powers. He is not subject, save in a limited degree, to any judicial supervision. I think all the changes in the New York Banking Law emphasize the court's duty of direction and supervision, not over the Superintendent of Banks in general, but in so far as he takes on the functions of a liquidator of an insolvent banking corporation.

In this judicial district, where the Union Bank had its principal office, the Supreme Court cannot shift or escape its responsibility to the depositors and to the public. The statute does not say, and the Legislature could not have intended, that in matters of liquidation the court should wait on the initiative of the Superintendent of Banks. Statute provisions for an order of court may often be complied with by an approval, quite formal, of what the Banking Department has planned. When, however, the depositors have waited over five years the statute should mean that real property held on increasing charges may be ordered to be converted into cash to pay those entitled.

Hence, I cannot agree that since 1908 the court has been relieved of a responsibility to the depositors hitherto conferred on and exercised by the chancellor and by the Supreme Court. But on this view I think a notification to the depositors and to the Superintendent, followed by a full public hearing and consideration of what the department may be doing in the way of liquidation of assets, should precede an order for an auction sale. Suppose, for illustration, that the Banking Department were in the midst of a negotiation to sell and convert the property, but had not yet come to the precise terms to be recommended to the court, plainly it might not be right to order an immediate auction sale. On this ground I concur to reverse the part of the order appealed from.

Order in so far as appealed from reversed, without costs.