In the Matter of the Application of the SOCIETA PRINCIPESSA IOLANDA MARGHERITA DI SAVOIA (FONDATA DAI BONITESI), INC., Respondent, for a Writ of Mandamus Directed to JOSEPH A. BRODERICK, as Superintendent of Banking Department of the State of New York in Charge of the CITY TRUST COMPANY, in Liquidation, Appellant.

Second Department, June 3, 1932.

*Michael N. Slotnick* [*William H. Lipkowitz* with him on the brief], for the appellant.

*F. R. Serri*, for the respondent.

PER CURIAM.   What the Superintendent should do when he takes possession of a bank was specified formerly in section 72 of the Banking Law in the following language: " He shall cause said notice to be mailed to *all persons whose names* appear as creditors upon the books of the corporation, banker or broker."   No mention is made of addresses.

Here, the books contained an account in the name of " Yolanda Margherita M. S. Fondo Mortuario."   The respondent claims that the foregoing name is one by which it is known.   In order, therefore, to cut off the rights of the respondent in the account carried in the name appearing on the books of the bank, the Superintendent was obligated to " cause said notice to be mailed to " Yolanda Margherita M. S. Fondo Mortuario.   The fact that the books contained no address did not excuse compliance with the statute.   The notice should have been mailed, as the statute directs, to the name appearing on the books of the bank either without any post office address or with the name of the post office in which the branch of the bank was located, to wit, " Brooklyn, N. Y."   Neither was done.   Fruitless, misdirected or futile investigations to procure

an address are not substitutes for the clearly required act specified in the statute.

Presumably the entity thus named on the bank's books was located in the community in which the branch bank was located. The provisions of the statute cutting off the rights of a claimant to such an account are so drastic that strict compliance with the statutory provisions is necessary in order to effect such a result. If such a notice had been mailed as required by the statute, even though without a post office address, the fact that this respondent did not receive the letter would not, of course, deprive the Banking Superintendent of the protection of the statute. It may not be said as a matter of law that a notice sent to the name quoted above would not have been received by the respondent or that such a mailing would be a futile act. The postal authorities are extremely resourceful in effecting delivery of letters with meagre or nondescript directions upon them. Addressees less accurately described than by the above-quoted name have received communications sent to them through the mails.

No question of fact appears herein with respect to whether or not the respondent was known among certain members of the community by the name which appeared on the books of the bank. Accordingly, the Special Term properly held that the Banking Superintendent did not comply with section 72 under the undisputed facts herein.

The order should be affirmed, with costs.

LAZANSKY, P. J., YOUNG and CARSWELL, JJ., concur; HAGARTY, J., with whom KAPPER, J., concurs, dissents and reads for reversal.

HAGARTY, J. (dissenting). I am constrained to dissent.

The order under review directs the issuance of a peremptory order of mandamus to the appellant, as Superintendent of the Banking Department of the State of New York in charge of the City Trust Company in liquidation, to accept the claim of the petitioner herein as an outstanding valid claim as a depositor as of the 11th day of February, 1929, and as though filed on or before the 10th day of March, 1930.

The City Trust Company was taken over for liquidation by appellant, pursuant to section 57 of the Banking Law, on the 11th day of February, 1929. The petitioner, at the time, was a creditor by reason of the fact that it had deposited with the respondent a death benefit fund for its members, amounting to the sum of $2,196.65. The name under which the account was opened and maintained appeared on the books of the City Trust Company as " Yolanda Margherita M. S. Fondo Mortuario." Freely translated,

and completing the words represented by the first letter, the account was under the name " Yolanda Margherita, Mutual Benefit Society, Mortuary Fund." There was no address upon the company's books.

Pursuant to an order of the Supreme Court, New York county, made on the 2d of August, 1929, an agreement was entered into by the appellant and the International Germanic Trust Company, under which the latter agreed to purchase and pay therefor all outstanding valid claims of depositors of the City Trust Company as of February 11, 1929. In the agreement it is recited that the known claims of depositors of the City Trust Company did not exceed $6,194,000, which total, I think we may assume, includes petitioner's claim. The agreement provided: " After the transfer to the party of the second part of the assets of The City Trust Company, the Superintendent of Banks will, when and as requested by the party of the second part, but not later than sixty (60) days from the date of the execution of this agreement, notify all persons who may have claims against The City Trust Company to present the same to him and make proper proof thereof within four (4) months from the date of said notice and at a place specified therein; and otherwise take such proceedings as may be required pursuant to Section 72 and other pertinent sections of the Banking Law with respect to the giving of notice requiring the filing of claims and the limitation of the rights of those who fail to file claims or fail to have their claims allowed; * * *. Anything herein contained to the contrary notwithstanding, the party of the second part shall not be required to purchase any claims of any depositor or of any other creditor of The City Trust Company whose claim has not been filed with the Superintendent of Banks pursuant to said notice and accepted by the Superintendent of Banks as valid, and otherwise established as valid in the manner provided in the Banking Law."

The law providing for the liquidation of a defunct bank by the Superintendent of Banks, effective at the time of this liquidation, is to be found in sections 72 to 76 of the Banking Law, before the amendments of 1930, 1931 and 1932.

" § 72. Notice to creditors to make proof of claims. When the Superintendent shall have taken possession of such corporation or private or individual banker or personal loan broker, and shall have determined to liquidate its affairs he shall notify all persons who may have claims against such corporations, banker or broker, to present the same to him and make proper proof thereof within four months from the date of said notice and at a place specified therein, and shall specify in said notice the last date for presenting

said proofs. He shall cause said notice to be mailed to all persons whose names appear as creditors upon the books of the corporation, banker or broker. He shall also cause said notice to be inserted weekly in such newspapers as he may direct for three consecutive months, the first insertion thereof to be published more than ninety days before the last day fixed in said notice for presenting proof of claims. After the date specified in such notice as the last date for presenting proofs of claims the Superintendent shall have no power to accept any claim."

Section 73 provides for the listing of claims duly presented within ten days after the last date fixed in the notice to creditors to present and make proof of claims, and directs that one copy of the list be filed in his office, and one copy in the office of the clerk of the county in which the principal office of such corporation is located.

Section 74 provides for objections to claims presented, within thirty days after the last date fixed in the notice to creditors to present and make proof of claims, by any party interested, by filing with the Superintendent such objections in writing. Unless the Superintendent rejects any claim to which objections have been filed, he shall, within thirty days after the time to file such objections has expired, apply to the Supreme Court, upon notice to the objector, for an order directing the Superintendent as to the disposition of the claim. The court may thereupon dispose of the objections or may order a reference.

Section 75 provides that the Superintendent shall, not later than thirty days after the time has expired to file objections to claims duly presented, accept or reject every duly filed claim except claims as to which objections are still pending undetermined by the court. Every claim shall be indorsed " accepted " or " rejected " and filed in his office. If rejected, notice of such rejection shall be given to the claimant as therein provided. Within thirty days after he has accepted or rejected all claims duly filed, he shall list all claims accepted and rejected by him and file one copy in his office and one copy in the office of the clerk of the county referred to in section 73.

Section 76 provides that the claimant, under a claim which has been accepted, shall be entitled to share ratably with other general creditors in the distribution of the assets of the defunct corporation. The section further provides: " When the time within which the Superintendent is required to accept or reject claims has expired and at any time within six months thereafter, a claimant whose claim has been duly filed and has not been accepted by the Superintendent may institute and maintain an action thereon against such corporation, banker or broker.

" No action shall be maintained against such corporation, banker or broker while the Superintendent is in possession of its affairs and business unless brought within the period of limitation speified in this section. In all actions or proceedings instituted against such corporation, banker or broker while the Superintendent is in possession of its property and business, the plaintiff shall be required to allege and prove that the claim upon which the action is instituted was duly filed and that sixty days have elapsed since the expiration of time for filing said claim and that said claim has not been accepted."

Under the contract with the International Germanic Trust Company, and pursuant to the provisions of the Banking Law which I have considered, the Superintendent of Banks on the 9th day of November, 1929, caused notices to be mailed to creditors appearing on the books of the delinquent trust company, and to be published in newspapers, to present their claims on or before the 9th day of March, 1930, which was the date specified in such notice as the last date for presenting proofs of claims. As March ninth was a Sunday, the last date was the next business day, which was March 10, 1930. Concededly, no notice whatsoever was mailed to the petitioner. On the 20th of March, 1930, the Superintendent filed in his office, and also in the office of the clerk of the county of New York where the defunct trust company had its principal office, a list of all claims duly presented, specifying in the list the requirements of section 73 of the Banking Law. Assuming regularity and compliance with the law, which the appellant questions in this proceeding in so far as it is concerned, the 10th of April, 1930, was the last day, under section 74 of the Banking Law, for an interested party to file with the Superintendent, in writing, objections to any claim duly presented. The last date, under section 75 of the Banking Law, for the Superintendent of Banks to accept or reject the duly filed claims was the 10th day of May, 1930. The appellant on the 29th of May, 1930, filed a list of all claims accepted and rejected by him in his office and a copy in the office of the clerk of the county of New York. Again assuming compliance with the statute, the last date on which any action could be brought against the defunct trust company under section 76 of the Banking Law was the 10th of November, 1930.

The petitioner respondent did not file a claim, its name did not appear upon the list of May 29, 1930, nor did it institute an action or proceeding on or before the 10th of November, 1930.

The first sign of activity on the part of the petitioner respondent appeared on the 9th day of February, 1931, when, through its present counsel, it wrote the State Banking Department stating

its claim and that the failure to file it within the specified time was due either to "lack of notice to the society, or to an oversight possibly on the part of one of the officers of the society." Appellant answered this communication on the 4th day of March, 1931, refusing to accept the claim.

The appellant, in his affidavit in opposition to the motion, avers that there appears upon the books of the trust company a special interest account at the Atlantic State branch, at 594 Atlantic avenue, Brooklyn, under the name as I have stated it, but that the account bore no address, and after diligent search he, acting through his examiner, one Molloy, was unable to discover any address. There is a further specific allegation that there was no account in the name of the petitioner. Examiner Molloy submits an affidavit to the effect that he made an intensive search of all the correspondence files at the branch of the bank to ascertain the address of the party in whose name the account was listed, but was unable to find it.

No case exactly in point has been cited by either party, nor has independent search disclosed any. Our decision, therefore, must be controlled by the specific provisions of the Banking Law, pursuant to which this liquidation was undertaken by the Superintendent of Banks, and such general principles of law as may be helpful in determining the exact status of the petitioner and the application of the law to it.

Petitioner had a right to open its account in any form it saw fit acceptable to the bank. It had a right, too, to omit its address, and the trust company was compelled by no law that has been called to our attention to procure the addresses of its depositors. However, the petitioner was chargeable with knowledge of the provisions of the Banking Law, referring particularly to those cited in this opinion. The fact is that neither the petitioner's name nor its address was upon the books of the trust company. It affirmatively appears that there was no account on the books of the trust company in the name of the petitioner herein, that is to say, in the name of the Societa Principessa Iolanda Margherita Di Savoia (fondata dai Bonitesi), Inc. Respondent petitioner makes no claim that its name appears upon the books of the bank.

It is elementary that the relationship between the petitioner and the trust company is that of creditor and debtor. As such creditor against the bank now in liquidation, the petitioner's claim is governed by the procedure set forth in sections 72 to 78, inclusive, of the Banking Law. (*Matter of Bond* v. *Broderick*, 232 App. Div. 468; *Sun Holding Corp.* v. *14 West Seventy-second Street Corp.*, 140 Misc. 566; *Matter of Egan*, 258 N. Y. 334.) The issues involved

in those cases were entirely different from that before us, but they are authority for the general proposition of law that in liquidation the petitioner is governed by the provisions of the Banking Law, as I have stated them. I take it that they may be deemed authority, with equal force, to the effect that the appellant, too, is bound by the general provisions of the law, and that if he failed to comply with them and take the necessary steps as outlined for him, the responding claimant was not bound. In other words, if the Superintendent failed to take the preliminary steps as prescribed by law, the law had no application whatsoever to the respondent.

The sole question here is whether or not, under the circumstances, the Superintendent was excused under the law from sending the notice prescribed by section 72 to this petitioner. In my opinion, he was under no obligation to do more than advertise, which is a secondary provision for notice to creditors. It is not claimed that the name of the fund was an assumed name by which the petitioner was known. Mailing notice to a fictitious name — an inanimate thing, neither person nor corporate entity — without address, or addressed in general to a community, may not be assigned to the appellant as a duty which he should have performed under the Banking Law. Assuming that the bank was neglectful in permitting the petitioner to open its account in its present form, that neglect cannot be charged against the appellant. He took the books as he found them, and his only concern here is a liquidation in conformity to the law. Such liquidation is statutory, and the powers and duties of the Superintendent were derived from the statute itself and are not subject to control by the court. Upon this point Presiding Justice JENKS, for this court, wrote in *Matter of Union Bank of Brooklyn* (176 App. Div. 477): " I think that the court overlooked a distinction between the Superintendent as a liquidator, and a receiver appointed by the court, that excluded the former from the power of the court exercised in this instance. The former common-law right of banking is now a franchise derived from the Legislature (*Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Ch. 377; *People* v. *Utica Ins. Co.*, 15 Johns. 378), and the Superintendent is the head of the department for the State regulation of such franchise. He is not a part of the judicial branch of the government. He does not take his office nor derive any of his original powers from it. He is of the administrative branch of the government, appointed by the Governor and confirmed by the Senate. (Banking Law, § 10.) He is a State officer. (Public Officers Law [Consol. Laws, chap. 47; Laws of 1909, chap. 51], § 2; *People ex rel. Baird* v. *Nixon*, 158 N. Y. 221.) And as such officer he is expressly clothed by the Legislature with this power of

liquidation. (Banking Law, § 69.) His possession is not that of the court. The statute declares that he may forthwith take possession of the business and property of a banking corporation that has violated its charter or any law; * * *."

It cannot be contended that the respondent was without notice. The provision for publication in the statute was for a purpose. No doubt, just such a case as this was contemplated. It seems inconceivable that, with all the publicity incidental to the failure of this trust company, the respondent had no knowledge of it, and consequently did nothing to protect its interests. It is not meant to be inferred, however, that such publicity can be deemed a substitute for the requirement of the statute.

The Banking Law provides a comprehensive scheme for the orderly liquidation of a delinquent bank. The scheme of the statute as enacted was to provide a procedure for the liquidation of delinquent corporations through a department of the State for the benefit of creditors, which would be economical and speedy. (*Van Tuyl* v. *Scharmann*, 208 N. Y. 53.) The last cited decision was with respect to section 19 of the former Banking Law governing liquidation. The sections of the present Banking Law considered are part of the Laws of 1914, chapter 369. That law repealed, among others, section 19 of the former Banking Law, which, like the present law, dealt with proceedings against and liquidation of delinquent corporations and individual bankers. Under section 19 the Superintendent was required to publish notice to claimants to present their claims within a specified time. However, claims presented after the expiration of the time fixed in the notice were entitled to share in the distribution, but only to the extent of the assets in the hands of the Superintendent equitably applicable thereto. This provision of the law was done away with entirely by the new Banking Law, which went further, providing that the Superintendent has no power to accept any claim "after the date specified in such notice as the last date for presenting proofs of claims." By section 72 no claim can be accepted by the Superintendent after the specified date. Considered in connection with the subsequent sections of the Banking Law, it is clear that the Legislature intended to exclude claims not presented in time from participation in the assets of a delinquent bank, just as it was clear under former section 19 that late claims could share in the distribution of the assets to a limited extent. Section 19 also read: "The court may make proper provision for unproved or unclaimed deposits." That provision was entirely omitted from the present Banking Law (§ 78), which, however, provides for "dividends remaining unclaimed or unpaid in the

hands of the Superintendent," but no provision is made for unproved or unclaimed deposits. Dividends, of course, are predicated upon claims duly presented.

The amendments to the sections governing this proceeding in 1930 and 1931 do away with the necessity of filing claims by depositors of a defunct bank. Depositors whose names appear upon the books are recognized as creditors for the amount indicated in the account. This is a wise provision, but it was not in the law at the time the rights as between these parties became fixed.

Order granting motion for the issuance of a peremptory mandamus order affirmed, with costs, as a matter of law and not in the exercise of discretion.