MOBLEY, superintendent of banks, *et al. v.* GREENE.

No. 6957. SEPTEMBER 19, 1929.

*C. N. Davie, O. A. Park,* and *J. F. Kemp,* for plaintiff in error. *M. J. Head,* contra.

BECK, P. J. The assets of the Bank of Tallapoosa were surrendered on the first day of December, 1925, to the superintendent of banks for liquidation, as is provided by the provisions of article 7 of the banking act of 1919. A liquidating agent was employed, and the usual expenses incurred from that time until the spring of 1928. The superintendent determined to sell the assets then remaining in his hands, and to wind up the liquidation of this bank. To accomplish this purpose he presented to the judge of the superior

court of the county in which the bank was located an application to sell these assets, describing them. This application was presented as is provided by section 7 of article 7 of the banking act. It was duly served as required by the order of the court. Whereupon the court prescribed, as a part of the terms and conditions of said sale, that the superintendent should put up the assets separately and receive separate bids thereon. These assets consisted of notes, stock, and other personal property, the face value of which was $98,066.37. The sale was held in conformity with this order. The superintendent received bids for all of these assets, aggregating $1880.07. When the bids were presented to the superintendent he refused to consider them and to submit them to the court for confirmation. In the meantime he interested himself in obtaining a higher bid, and was successful in obtaining a bid for all of the assets in the sum of $3500. He made a report of this bid to the court, reciting that at a previous sale the aggregate bid received was $1880.07, and that he had obtained this $3500 bid and presented it to the court for approval. The court, after considering this report, passed an order refusing to confirm the $3500 bid, and refused to approve the $1880 bid, but did approve the sale of certain notes after eliminating from said sale the bids upon 15 shares of stock of the Farmers' Warehouse and Wholesale Company, 7 shares of stock of the Federal International Banking Company, certain purchase-money land notes, some calcium arsenate, and 3 Johnson dusters. These assets were valued, in the application for sale, at $5,187.06, and were sold for $1,179.85. In the order approving this sale the court directed the superintendent of banks to deliver these notes to the purchasers. This the superintendent refused to do, and the defendant in error brought this mandamus proceeding to compel a delivery of the same. On the hearing the court made the writ of mandamus absolute, and ordered the superintendent to deliver these obligations to the purchaser. Thereupon the superintendent sued out this bill of exceptions.

The controlling question in this case is whether or not a judge of the superior court can by mandamus compel the superintendent of banks to deliver to a purchaser property bought at a sale authorized by the provisions of section 7 of article 7 of the banking act of 1919 (Ga. L. 1919, pp. 135, 156), over the protest of the superintendent, where the sale of the assets had taken place upon applica-

tion made therefor by the superintendent and the court had subsequently confirmed the sale, the order for the sale providing in terms for such confirmation. We are of the opinion that the mandamus absolute should have been refused. In the case of *Bennett* v. *Green,* 156 *Ga.* 572 (119 S. E. 620), it was said: "The superintendent of banks, in taking charge of the affairs of an insolvent bank for liquidation, is the agent of the State. He acts for and in behalf of the commonwealth. His possession is that of the State, who is his principal. The act creating the office of superintendent of banks expressly declares that his possession shall not be interfered with, and that the property in his possession shall not be seized under judicial process or otherwise." But it is insisted in this case that the superintendent submitted himself, in the matter of winding up the liquidation of the bank, by filing the application for the sale of the assets. This he did in accordance with the provisions of the act of the legislature, the banking act referred to above. This was an ex parte proceeding on the part of the superintendent in order to comply with the provisions made in the banking act for an order to sell doubtful debts or claims, or in certain cases the realty and personal property belonging to the insolvent bank. Procuring the order is a part of the machinery by which bad or doubtful debts or claims belonging to the bank may be converted into cash; and the superintendent in filing this petition for the order to sell does not submit himself to the jurisdiction of the court in such a way as to make the order passed by the court a judicial act; and the mere fact that the order goes further and provides for a confirmation by the court of the sale made under the order does not make the order of confirmation a judicial act. See ex parte Moore, 6 Fed. (2d) 905.

In Fifer *v.* Williams, 5 Fed. (2d) 286, in discussing such an application the Circuit Court of Appeals held: "There is no suit; no parties in the legal understanding of the term; no process must issue; no one is authorized to appear on behalf of the receiver or any one else, or to subpœna witnesses. It is an ex parte proceeding, and, though by the will of Congress put under judicial cognizance, is not by its own nature a judicial controversy." In re Union Bank of Brooklyn, 163 N. Y. Supp. 485, 486, the Appellate Division of the Supreme Court of New York said: "Thus it appears as superintendent he takes possession, holds possession until

final liquidation by him, and is authorized to liquidate, outside of any judicial proceedings. The fact that he must receive the sanction of the court before certain steps in his procedure are effective does not imply that the liquidation itself is judicial. . . When the court undertook thus to order the superintendent as a liquidator, it reached out to direct a State officer in the discharge of statutory duties, involving discretion, conferred upon him, not the court, when he and not the court was in custody of the assets. . . Liquidation does not necessarily require nor imply judicial proceedings. . . ' It is the superintendent, not the court, who is authorized to sell or otherwise dispose of [the assets]. . . The fact that the superintendent, when he sells the real and personal property of this corporation, must sell them 'upon such terms as the court shall direct,' does not in itself empower the court at its own instance to sell them forthwith, or at a specified time, if it is convinced that they should be sold. It is not for the court to set itself above the judgment and discretion of administrative officers to whom the law commits a decision, for thereby the court but confronts its opinion with his opinion." See, in this connection, *Bennett* v. *Duke*, 38 *Ga. App.* 598 (144 S. E. 686). From the decisions and the reasoning in cases decided by this and other courts, we have concluded that the order ordering the sale and that confirming the sale were not in the nature of judicial decrees or judgments, but were administrative in their character; and that the court should not have granted the mandamus absolute.

*Judgment reversed. Russell, C. J., and Hill, J., dissent. The other Justices concur.*