IN RE STATE BANK OF MILLARD COUNTY.

HADLOCK, State Bank Com'r, v. STATE BANK OF MILLARD COUNTY et al.

No. 5355. Decided March 7, 1934. (30 P. [2d] 211.)
Rehearing Denied January 7, 1935.

*Sam Cline,* of Milford, for appellant.

*W. B. Higgins,* of Fillmore, for respondents.

STRAUP, Chief Justice.

Hadlock, the state bank commissioner, in pursuance of the Banking Act, Laws of Utah 1921, c. 23, as amended by Laws of Utah 1923, c. 33, took possession of the business and property of the State Bank of Millard County at Fillmore and proceeded to liquidate it. He, for the period from February 1 to March 15, 1932, filed a report in the district court in and for Millard county, showing an itemized statement or report of liquidation and expenses which he asked the court to approve and to permit the commissioner out of assets of the bank to pay the compensation and expenses as so reported by him. Objections on behalf of depositors of the bank were filed, especially as to the compensation to be paid the examiners, stenographers, and certain traveling expenses. The objections were on the ground that but one examiner was all

that was necessary for the proper liquidation of the bank, and that the compensation as fixed by the commissioner to be paid the examiners, stenographers, and certain traveling expenses were unreasonable and excessive.

Evidence by both parties was adduced before the court. The court approved the report, except as to the compensation to be paid the examiners and mileage for traveling expenses. One of the examiners was at the bank all the time and engaged exclusively in liquidation of the bank. His compensation as fixed by the commissioner and asked to be approved was $250 a month. The protestants averred he was not entitled to more than $125 a month. The other examiner was employed by the commissioner with general supervision of four banks in the southern part of the state, one at Fillmore, the bank in question, one at Beaver in Beaver county, one at Richfield in Sevier county, and one at Panguitch in Garfield county, all of which were suspended and taken over by the bank commissioner and were in process of liquidation. An examiner was employed at each of such banks whose entire time was engaged at the bank for which he was employed. It was the duty of the examiner with general supervision to visit all of such banks and supervise and direct the local examiner. He in effect under the bank commissioner was in charge of the liquidation of the four banks. His salary was fixed by the commissioner at $550 a month for all of the banks, out of which he was required to pay hotel and living expenses, not including mileage for traveling expenses, which as estimated reduced his compensation to about $350 a month. It was agreed between the bank commissioner and such general examiner that the compensation so fixed at $550 for services at the four banks was to be apportioned, $200 a month for services rendered at the Fillmore bank (it having the largest amount of assets to be administered), $125 at the Beaver bank, $125 at the Richfield bank, and $100 at the Panguitch bank, according to assets and the extent of liquidation required at each bank. The only matter, however, in such respect before the court

was the compensation to be paid such general examiner for services rendered at the Fillmore bank and the amount to be paid the local examiner. The amounts so fixed by the bank commissioner, $250 a month for the local examiner and $200 for the general examiner for services rendered at the Fillmore bank, and 10 cents a mile for traveling expenses were disapproved by the court. While the court under the statute disclaimed the right or power himself to fix the amount of compensation and expenses to be paid, yet, at the request of counsel for the bank commissioner, indicated that he would approve $200 a month for the local examiner and $110 a month for the general examiner, and traveling expenses not to exceed 7 cents a mile. The commissioner declined to accept the ruling, and appealed therefrom.

From a consideration of the amount involved, the difference between what the commissioner asked to be allowed and what the court indicated he would approve is hardly worth an appeal. However, it is asserted that the chief purpose of the appeal is to obtain a judicial determination as to the power and function of the court in such case in approving or disapproving compensation and expenses as fixed by the bank commissioner and agreed to be paid by him. By the commissioner it is asserted that such power or function of the court is merely administrative and not judicial; the contrary is asserted by the respondents.

In the case of *Riches* v. *Hadlock, State Bank Commissioner*, 80 Utah 265, 15 P. (2d) 283, we had under consideration the Banking Act referred to, and among other things considered the function, scope, and power of the bank commissioner as by such laws provided. As to that we held that the commissioner was an executive officer of the state and not an officer of the court, and that his taking possession of property and business of a bank and liquidating it was not as an officer of the court; that his custody of the property was not as a receiver appointed by the court, the custody of the court; that he was a public agent or

officer of the state with power to act as prescribed by the statute and could exercise only such power as the statute had conferred upon him uninfluenced by judicial action, except as otherwise prescribed by the statute. In support thereof texts and cases dealing with similar statutes are there cited. Additional cases to the same effect are cited by the appellant. *State ex rel. Richmond* v. *District Court*, 45 Wyo. 29, 14 P. (2d) 673; *Mobley, Supt. of Banks,* v. *Greene*, 169 Ga. 82, 149 S. E. 703; *Fifer* v. *Williams* (C. C. A.) 5 F. (2d) 286; *Matter of Union Bank of Brooklyn*, 176 App. Div. 477, 163 N. Y. S. 485; *Farrell* v. *Stoddard, Supt. of Insurance* (D. C.) 1 F. (2d) 802; *Cochran* v. *Bennett,* 37 Ga. App. 202, 139 S. E. 428; *Bennett* v. *Duke*, 38 Ga. App. 598, 144 S. E. 686; *Isaac* v. *Marcus*, 258 N. Y. 257, 179 N. E. 487.

The portion of the statute (Laws 1921, c. 23, as amended by Laws 1923, c. 33) drawn in question is as follows:

"Sec. 9. The expenses incurred by the bank commissioner during possession or in course of the liquidation of any bank in accordance with the provisions of this act, shall include the expenses of deputies or assistants, clerks and examiners employed in such possession or liquidation together with reasonable attorney fees for counsel employed by said bank commissioner in the course of such liquidation. Such compensation of counsel, deputies, assistants, clerks and examiners in the liqudation of any such bank, and all expenses of supervision and liquidation *shall be fixed by the bank commissioner, subject to the approval of the district court of the county in which the office of such bank was located,* on notice to such bank. The expense of such liquidation shall be paid out of the property of such bank in the hands of said bank commissioner and such expenses shall be a valid charge against the property in the hands of said bank commissioner and shall be paid first in the order of priority; provided, however that no such expense shall be paid out of the property of such bank *until an account of such expense shall have been filed with and approved by the district court* of the county in which such bank is located." (Italics added.)

The particular parts of the section involved are the italicized portions, the meaning of the language that such compensation and expense "shall be fixed by the bank commissioner, subject to the approval" of the court and none to be

paid, etc., until "approved by the" court. In other words, what is meant by the words "approved by the court" and what power or function is the court required or permitted to exercise in determining the amount of compensation or expenses to be allowed in a given matter or item with respect to which the bank commissioner has fixed the compensation and amount of expenses and submitted the same to the court for approval? On the one hand it is contended that no power or discretion is conferred on the court to determine the amount of compensation or expenses; that such discretion is conferred alone on the bank commissioner, and all that the court may inquire into is whether the commissioner in fixing such compensation abused his discretion, whether the service for which compensation is claimed or expenses incurred was such as was performed or incurred in connection with the liquidation of the bank and necessary for such purpose, whether the amount or amounts fixed by the commissioner were so excessive or unreasonable as to show bad faith or as having been fixed capriciously or arbitrarily and not in the exercise of a sound discretion, or in accordance with the character, quality, and extent of the services rendered or expenses incurred; but that the court otherwise may not set up his judgment against that of the commissioner in fixing and determining the value of services rendered or of expenses incurred shown to have been rendered and incurred in the liquidation of the bank.

On the other hand it is contended that the court is required and permitted to examine the account or report filed by the commissioner, to inquire into it and take evidence with respect thereto, not only for the aforementioned purposes, but also to determine the reasonable value of the service rendered and expenses incurred, and to ascertain and determine under all the facts and circumstances in evidence as to whether the compensation and expenses incurred as fixed by the commissioner were reasonable and just, and, if found to be so, to approve and confirm the report in such particular, otherwise to disapprove it, and the court under all the

facts and circumstances in evidence itself fix and determine the value and amount of such compensation and expenses.

The term "approval" is susceptible of different meanings, dependent upon the subject-matter and context concerning which the term is employed and the object and purpose to be subserved or accomplished. Ordinarily the term in its most obvious meaning is to commend, confirm, ratify, sanction, or to consent to some act or thing done by another. 1 Words and Phrases, Second, Third, and Fourth Series, and cases there referred to. As used in some statutes or texts, the act of "approval" implies the act of passing judgment, the use of discretion, and a determination as a deduction therefrom, unless limited by the statute. As used in other statutes, the term implies the exercise of sound judgment, practical sagacity, wise discretion, and final direct affirmative action. *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, 144 N. E. 447. In some cases the term implies the exercise of judicial action or discretion, while in other cases the exercise of only an administrative function or capacity and not in a judicial sense.

In the Riches Case, supra, we held that the bank commissioner derived his rights, duties, and powers not from an order of the court, but from the statute itself; that he was an executive officer and an agent and officer of the state, responsible to the sovereignty of the state and not to the court, except as otherwise by the statute provided; that in such respect the commissioner stood in a different relation to the court than a receiver appointed by the court and subject to its directions and orders and answerable to the court. Such view under similar statutes is supported by the great weight of authority.

The question thus is, What effect is to be given the language of the statute referred to, that the compensation of examiners, assistants, and clerks, etc., and the expenses of liquidation, "shall be fixed by the Bank Commissioner, subject to the approval" of the court? With respect thereto

and in considering a similar statute, the court in the case of *Bennett* v. *Duke,* supra, held that "the superintendent of banks in charge of an insolvent bank for liquidation (under laws of that state) is an officer of the state charged with the duty of administering assets of the bank under the act and is not an officer or receiver of the Superior Court though required to obtain an order of approval for acts from the judge of the Superior Court," that requiring "the superintendent of banks to obtain an order of approval from the judge of the Superior Court in the performance of certain duties as liquidating officer of an insolvent bank," did not render him "amenable to the supervision of the Superior Court in administering assets of the bank," and that "the power of a judge of the Superior Court to approve the amount fixed by the superintendent of banks as expenses of liquidation of an insolvent bank is not judicial but administrative only," etc. To that effect in principle are also the cases heretofore referred to and cited by the appellant. So, too, 3 Michie, Banks and Banking 39; *In re Union Bank of Brooklyn,* 176 App. Div. 477, 163 N. Y. S. 485; *Cochran* v. *Bennett, Supt. of Banks,* 37 Ga. App. 202, 139 S. E. 428; *Fifer* v. *Williams* (C. C. A.) 5 F. (2d) 286; *Labette County Com'rs* v. *Peterson, Bank Com'r,* 118 Kan. 560, 235 P. 848; *Ex parte Smith,* 160 Ky. 83, 169 S. W. 582; *Oakley* v. *Davis,* 142 Wash. 432, 253 P. 648; *State ex rel. Cowles* v. *Schively, Ins. Com'r,* 63 Wash. 103, 114 P. 901.

Whatever power the court is permitted or required to exercise, whether merely administrative or somewhat judicial in character dependent upon the issues, it may readily be conceded that such power in approving compensation and expenses incurred is not as extensive as possessed by the court in a cause or proceeding where a receiver, administrator, or other person is appointed by the court and subject to its orders and direction. Still, in approving or disapproving the compensation or expenses as fixed by the commissioner, the court is required to do something more than merely put his "rubber stamp" on the report ap-

proving or disapproving it. In the one instance (a receiver appointed by the court) the court on a hearing and on the evidence adduced concerning the matter of compensation and expense is itself required or permitted to fix the compensation and expenditures to be allowed, while in the other, before approving or disapproving the compensation and expenditures as fixed and reported by the commissioner and asked to be approved, the court likewise may hear evidence concerning the character, quality, extent, value, and necessity of the services rendered and expenses incurred, for the purpose of ascertaining whether such service and expenditures were legitimate and reasonably necessary in the liquidation of the bank, whether incurred in good faith and in the exercise of a wise and sound discretion, free from fraud, collusion, or bad faith, whether the amount of compensation and expenditures as so fixed and sought to be approved is so excessive and unreasonable as to leave no room as to difference of opinion of those familiar with the reasonable value of such service, and whether the commissioner in engaging the service and fixing the compensation and incurring the expense regularly pursued his authority. Unless the court is permitted to inquire into such or similar matters and questions, the statute requiring approval by the court is meaningless. But that, as we think, is the extent of the court's inquiry and determination. In the exercise of such power the court, however, may not, as in case of a receiver or other officer of the court subject to its orders and direction, set up his mere judgment against that of the bank commissioner, nor is the court given power itself to fix or determine the compensation as in the first instance or on evidence adduced fix and determine the compensation as the court in its discretion and judgment may be advised.

Here the court heard the evidence with respect to the report filed by the bank commissioner, particularly as to the compensation of the examiners, assistants, stenographers, etc. Evidence was given on behalf of the commissioner concerning the amount and character of assets of the bank, in-

cluding loans and discounts and other resources, the amount of deposits and the number of depositors and of other obligations and liabilities, the character of work and services required in the liquidation of the bank, the necessity of examiners and stenographers; that the compensation agreed to be paid the alltime examiner and to the general examiner for part time at the bank, the amount agreed to be paid the stenographers, one at $85 a month, the other $50, were reasonable and in accordance with compensation paid for such services at banks generally; that the performance of duties of examiners required skill and experience in banking, something more than a mere knowledge or experience in bookkeeping or accounting; that the general monthly expenses of liquidation did not exceed $580, whereas the monthly expenses of the bank for similar services when the bank was suspended and prior thereto was over $700; that the state banking department by rule allowed 10 cents a mile for traveling expenses, which allowance later was reduced by the department to 7 cents; that while the allowance was 10 cents such amount was charged, but, when reduced, only 7 cents were charged.

Witnesses for the respondents testified that bookkeepers and accountants could be had for $150 a month and stenographers for $50. Some of the witnesses so testifying had no banking experience and no knowledge as to the kind of work required in the liquidation of a bank. Others having some banking or similar experience testified to the same effect, but some of whom further testified that a bank examiner in the liquidation should require more knowledge and experience than that of a bookkeeper or of an accountant; that the work of a bank examiner required discretion in settling accounts and in collecting them; that it required a certain amount of experience and ability to be able to work out favorable settlements, extensions of time, when to force collections and when not, knowledge and experience as to what class of credits extension of time should be given; but that in their opinion such a man with all of such qualifi-

cations could be had for $150 a month. No evidence was given to show that the examiners or the stenographers were incompetent or not qualified to do the work, or that the liquidation could properly be had with less help. The particular point made at the hearing was that the $250 to be paid the one examiner and $200 the other and $85 a month for a stenographer was excessive.

No findings were made by the court. At the conclusion of the evidence, the court, reciting that he had heard the evidence introduced by both parties and having considered the same, and being advised, ordered "that said account (as filed by the Bank Commissioner) be and the same is hereby approved, settled and confirmed as to all items, excepting the salaries of" the examiners "and mileage over seven cents, which items of salaries (and mileage at 10c a mile) are hereby not allowed or approved."

However, as further appears by the record, the court orally announced that he thought the compensation to be paid the examiners and the mileage at 10 cents a mile were unreasonable. Upon request of counsel for the commissioner that the court indicate what amount the court would approve, the court indicated that he would approve $200 a month for the all-time examiner and $110 for the part-time examiner and 7 cents a mile where 10 cents were charged; and, if such reductions were made, he would approve the report as filed, the court at the same time stating he had no power himself to fix the amount of such compensation or expenses.

There is no conflict in the evidence as to the character, quality, or extent of the services rendered by the all-time examiner nor as to the necessity of such service. The only objection made with respect thereto by the protestants was on the ground that the compensation of $250 a month was unreasonable. No findings were made by the court in such or in any particular, the court only orally indicating that he thought such compensation unrea-

sonable, disapproved it, and indicated that he would approve a compensation of $200 a month. As to that it is apparent the court merely set up his judgment against that of the commissioner. Not anything was found nor indicated by the court of any abuse of discretion by the commissioner or that the services rendered were not necessary in the liquidation or did not pertain thereto, nor did the court otherwise find or indicate anything to bring the case within the stated rule wherein the trial court was justified in disapproving compensation. No such disparity between the amount as fixed by the commissioner and the amount the court was willing to approve was shown as to indicate that the amount as fixed by the commissioner was so excessive that reasonable and unbiased minds could not differ with respect thereto. We think the trial court erred in disapproving such compensation.

Now as to the part-time or general examiner. Again, the court did not find nor indicate that the liquidation of the bank did not require services of more than one all-time examiner or that it was not proper or necessary to employ, as did the commissioner, a general examiner to assist and direct the local examiners of the four banks, or that the commissioner was not justified in apportioning the compensation for such service to each bank in accordance with services required to be rendered. Of course, services rendered or expenses incurred at one bank could not properly be charged to another. As well observed by the trial court, he was not concerned with the compensation or expenses to be charged to the various banks; that he was only concerned with the compensation and expenditures charged to the Fillmore bank. The only disapproval of the filed report with respect to the compensation and expenses of the general examiner was the compensation of $200 charged to the Fillmore bank and 10 cents instead of 7 cents a mile for traveling expenses. In all other particulars the court approved the account as to such general examiner. In no other particular did the protestants challenge such ac-

count. Nor did the court disapprove such compensation on the ground that, covering the period in question, the general examiner had not rendered adequate or sufficient service at the Fillmore bank or that his services were not required at such bank or that the commissioner was not justified in apportioning the fixed salary of $550 a month (out of which the general examiner was required to pay his hotel and living expenses) to the four banks over which the examiner was required to exercise supervision and direction, but that the compensation of $200 for services rendered at the Fillmore bank was unreasonable, without finding what time covering the period in question was devoted by the general examiner at the Fillmore bank or in connection therewith. The general examiner was shown to have had a rather long experience in banking business, experience as an examiner in the banking department and in liquidation of banks. His competency or ability to exercise a general supervision and direction over the local examiners and to direct them in the work was not questioned.

Had the court the power on the evidence adduced himself to fix the compensation as in case of determining compensation of a receiver appointed by the court and who in the administration of an insolvent estate or concern was subject to the orders and direction of the court, it might well be that the compensation as indicated the court was willing to allow would not on appeal be disturbed. But as heretofore indicated no such discretion or power by the statute is conferred upon the court, that he was authoried to disapprove compensation as fixed by the commissioner only when an abuse of discretion was shown or on other grounds as heretofore stated. On the record we think no such sufficient showing was made to justify the disapproval. Such disapproval primarily rests on mere differences of opinion between the trial court and the commissioner as to the reasonable value of services rendered by the general examiner. The court did not find nor indicate that the compensation asked to be approved was so excessive or unreasonable that

unbiased minds familiar with such services could not well disagree with respect thereto. Perhaps the evidence ought to have been more definite or specific as to how much time covering the period in question was devoted by the general examiner at the Fillmore bank or in connection therewith. But the disapproval was not put nor is it defended on such ground.

The banking department by a promulgated rule allowed 10 cents a mile for traveling expenses. While such rule prevailed the general examiner made such a charge. Later the rule was modified and only 7 cents a mile were allowed. Thereafter the general examiner charged only 7 cents. However, where, covering the period in question, he had charged 10 cents, the court disapproved the charge ■ and permitted a charge of only 7 cents. The total difference in such respect amounts to only about $18 which considered by itself is of no great consequence. The general examiner in charging mileage having followed the rule promulgated by the banking department, the court should not have disapproved such charges, unless found to be so excessive or unreasonable as to show an abuse of discretion or no relation to any kind of reasonable value for such traveling expenses.

On the face of the report, however, there seems to be some charges which without explanation may be open to question. It is to be noted that out of the monthly compensation of the general examiner of $550 and apportioned to the four banks, the examiner was to pay his own hotel and living expenses. But according to the report as filed, the general examiner, covering the period in question, while at the Fillmore bank charged something more than $70 to the Fillmore bank for "room and board."

He resided in Salt Lake City. Covering the period in question he, as appears on the face of the report, charged traveling expenses for six trips from Salt Lake to Fillmore, a distance of 150 miles and back, amounting to about $88.
■

No explanation was given as to the occasion or necessity of all or any of such trips. Nor was there any evidence given to show how much of the time covering the period in question, from February 1 to March 15, was devoted or spent by the general examiner at the Fillmore bank or in connection therewith, or how much time at Salt Lake City or elsewhere. But no point was made to any of such charges for room and board nor as to such trips nor was the report disapproved because thereof nor is there any point made with respect thereto on the appeal. On the theory that all of the time of the general examiner would be devoted among or to the four banks, that in doing so he would be out hotel and living expenses estimated to be $200 a month, his monthly compensation was fixed at $550 out of which he was to pay his hotel and living expenses. He himself so testified. His compensation having been fixed upon such basis and a most liberal allowance made for his hotel and living expenses, he should not be permitted to charge up hotel and living expenses, room and board, to the Fillmore bank or to keep down such expenses by traveling back and forth from his residence and charge up mileage therefor. Still, no point having been made with respect thereto and the disapproval of the report not based upon any such grounds, we may not properly give any relief with respect thereto.

Thus, on the record, we are of the opinion that the trial court erred in disapproving the filed report in the particulars indicated and upon which the report was disapproved.

The judgment of the court below is therefore reversed, and the case remanded for further proceedings in accordance with the views herein expressed. All taxable costs on appeal of both parties are to be paid out of the assets of the bank.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.