This case comes to the writer on reassignment. The Depositors' Committee of the defunct Provo Commercial Savings Bank appeals from an order approving a compromise offer of certain debtors of the bank. The Bank Commissioner recommended approval of the offer and joined the application for approval filed May 21st, 1936. Orders overruling protestants' (Depositors' Committee) demurrers and approving the offer of compromise are assigned as errors.
The Provo Commercial Savings Bank failed to reopen at the end of the national banking holiday proclaimed on March, 1933. The State Banking Department immediately took over the Bank for preservation and liquidation of its assets as provided in R.S. Utah, 1933, 7-2-1, then Laws of Utah, 1921, p. 79, Sec. 1, as amended. At that time the C.E. Loose Corporation, the estate of Charles Edwin Loose, Erma Loose Peterson, Clarence Charles Loose, W. Dean Loose, Fay Loose Gordon, and Preston G. Peterson all owed substantial sums to the bank and they were also subject to stockholder's liability as later assessed in full.
All of these debtors except Preston G. Peterson, on June 27, 1933, conveyed certain real and personal property to E.H. Street, Deputy Examiner of the State Banking Department in charge of liquidation of this bank and Preston G. Peterson, in trust —
"* * * in order * * * to expedite the payment and discharge of the outstanding indebtedness of said Grantors, and to prevent costly litigation, foreclosures, and receivership proceedings * * * to bring about the early payment and discharge of the obligations of said Grantors to their creditors, who are the principal beneficiaries under the terms of this trust."
Herbert Taylor succeeded E.H. Street as Deputy Examiner and was lawfully appointed trustee in his stead by the *Page 369 
court. This property was encumbered to others than the bank to the extent of about $78,000 prior to the bank's claims. The alleged indebtedness of these trustors and Preston G. Peterson was $153,708.44 (so far as this petition for compromise is concerned that amount is not disputed by the petitioners). The court designated representatives of the bank and the depositors' committee upon whom service could be made.
The petition, after alleging the facts of insolvency, indebtedness and creation of the trust as above indicated, and that "efforts have been made to liquidate the obligations of the above-named trustors to said Provo Commercial Savings Bank," contains allegations of the offer in compromise by the trustors and Preston G. Peterson of all of their indebtedness to the bank and requests the court to approve the offer of $50,000 in cash. It is then alleged that the Bank Commissioner "has carefully considered the foregoing offer, that he has discussed the same with many of the members of the depositors' committee and that he is of the opinion that if said $50,000.00 in cash be received * * * the best interests of all parties concerned, including the depositors and creditors of said Provo Commercial Savings Bank, will be served, and he therefore recommends the acceptance of such offer to this court."
To this petition the protestants, in behalf of the depositors, interposed a general demurrer that the "petition does not set forth facts which would entitle petitioner to relief sought for" and a special demurrer specifying, inter alia: "That said petition does not allege any facts on which the said petitioner bases his opinion that it would be to the best interests of the depositors and creditors of said Bank to accept said compromise offer, nor can it be ascertained from said petition any of the facts, circumstances and reasons upon which said opinion of said petitioner is based." These demurrers were overruled, which rulings are assigned as error. The correctness of such rulings are the first questions necessarily to be decided by this court. *Page 370 
Section 7-2-12 of the Laws of Utah, 1935, Chapter 9, provides:
"* * * He [the Bank Commissioner] shall collect all debts due and claims belonging to it, and upon the order of the court may compound all bad or doubtful debts. * * *" (Italics supplied.)
The Bank Commissioner in this state derives his authority not from the court but from the legislature, under R.S. Utah, 1933, Title 7, amended by Laws of Utah, 1935, Chap. 9. He is a statutory officer and not an officer of the court as 1 are ordinary receivers. His powers are defined by statute and the judicial department can neither limit nor expand such powers as are validly conferred.
"He is a mere executive creature of the statute, not of the court, and can exercise only such powers as the statute has given him; and no order of the court applied for can be broader than the statute. In other words, he is a public agent or officer of the state and derives his powers from the statute." Riches v.Hadlock, 80 Utah 265, 15 P.2d 283, 287.
The Bank Commissioner, even with the approval of the court, can compromise only bad or doubtful debts. Doubtful debts include those doubtful as to validity or as to collectibility. The petition contains no allegations that these debts were not legally provable or that they were doubtful debts in the sense of not being collectible; there are no 2-4 allegations of the individual indebtedness of the debtors offering compromise nor of their ability or lack of it to pay. The basis of the petition and the reason advanced therein for requesting the court's approval, is that the Bank Commissioner, after careful consideration, has concluded that the best interests of all concerned, including the depositors, will be thereby served. Does this constitute a petition for compromise of liabilities owing an insolvent bank good against the demurrers interposed by these protestants? We think it better that the petition state facts from which is may be concluded that the best interests will be *Page 371 
served rather than to let the case rest on the bare conclusion of the pleader. Some facts should be alleged to show that the debts are doubtful. By implication from the facts of this case there seems to be no doubt as to the validity of the debts. But no facts are alleged to show that they are of doubtful collectibility. The court has to make inquiry and exercise judgment in determining whether it shall approve or reject the offered compromise. The petition, however, is not governed by the stricter rules of pleading that require a cause of action to be stated. The petition is to start the inquisitorial machinery of the court into action. If it states enough to put the court on notice of what compromise it is asked to approve, and if it serves to open up the necessary inquiry and all parties interested are given their day in court and free inquiry is permitted by all parties, we would not reverse because the petition was deficient in the allegation of some facts which might well be there as a basis for the exercise of the court's discretion.
The main question, therefore, is: Was the evidence sufficient to support the decree approving the compromise? Even in the case where the court has the duty of approving 5, 6 compensation of employees, under Section 7-2-14, R.S. Utah 1933, reading:
"Compensation of counsel, deputies, assistants, clerks and examiners in the liquidation of any such institution shall be fixed by the bank commissioner subject to the approval of the court on notice to such institution."
He is not a mere factotum. Malia State Bank of BeaverCounty, 83 Utah 471, 30 P.2d 217; Hadlock v. State Bank ofMillard County, 84 Utah 147, 30 P.2d 211. In the latter case, at pages 155 and 156 of 84 Utah, at page 214 of 30 P.2d, the court said:
"Still, in approving or disapproving the compensation or expenses as fixed by the commissioner, the court is required to do something more than merely put his `rubber stamp' on the report approving or disapproving it. * * * The court likewise may hear evidence concerning *Page 372 
the character, quality, extent, value, and necessity of the services rendered and expenses incurred, for the purpose of ascertaining whether such service and expenditures were legitimate and reasonably necessary in the liquidation of the bank, whether incurred in good faith and in the exercise of a wise and sound discretion, free from fraud, collusion, or bad faith, whether the amount of compensation and expenditures as so fixed and sought to be approved is so excessive and unreasonable as to leave no room as to difference of opinion of those familiar with the reasonable value of such service, and whether the commissioner in engaging the service and fixing the compensation and incurring the expense regularly pursued his authority.Unless the court is permitted to inquire into such or similarmatters and questions, the statute requiring approval by thecourt is meaningless." (Italics added.)
In the case of approval of compensations, the court may not substitute its judgment for that of the Bank Commissioner; otherwise the latter could not proceed except at his peril. But in the case of approval of an offered compromise, the court has the duty of determining whether or not the debt should be compromised.
This question has not previously been passed on by this court, but this power of the commissioner to compromise debts was referred to in a dictum in Riches v. Hadlock, supra, at page 280 of 80 Utah, 15 P.2d page 289. There, the commissioner sought approval of a loan for an insolvent bank from the Reconstruction Finance Corporation and in groping for the provision on which such authority was based, the court inquired into the power to compromise bad debts. It decided that this was not the theory of the petition and said:
"But the commissioner did not apply to the court to sell real estate or personal property or to sell or compound bad or doubtful debts. No claim is made that the petition filed by the commissioner was for such purpose. It was not even alleged,shown, or found that there was any real or personal property orany bad or doubtful debts." (Italics supplied.)
The trial court itself recognized the necessity of a 7 factual basis for judgment. He stated: *Page 373 
"This petition being in the nature of a petition to compromise a claim, of course places before the Court for investigation the value of the property involved within the trust, the ability of the compromisors, if we may use that term, those who seek to compromise their claims to pay fifty thousand dollars, or more than that, the same as any other petition for compromise must involve those things before the Court can pass upon the wisdom thereof * * * I think any matter of a source from which these obligations might or could be paid is a proper subject of inquiry in determining the advisability of this compromise, of course. Compromises for less than value are based essentially upon the theory that under all the circumstances and the ability to pay, it is better to take less and get it than wait and take the chances on more." (Transcript, Pages 5 and 6.)
That the inquiry embraces an investigation into the ability of the debtor to pay and the likelihood of being able to collect is supported by many authorities. Gordon v. Hartford SterlingCo., 319 Pa. 174, 179 A. 734; Knaffl v. Knoxville Banking Trust Co., 139 Tenn. 240, 244-246, 201 S.W. 775; Macdonald v.Aetna Indemnity Co., 88 Conn. 571, 92 A. 154; Andrew v.Farmers' Merchants' State Bank, 205 Iowa 712, 218 N.W. 520;State v. German Savings Bank, 65 Neb. 416, 417, 418,91 N.W. 414; Michie, Banks and Banking, Perm.Ed., Vol. 3, Sec. 104; Fletcher, Cyclopedia of Corporations, Sec. 5312; 53 Corpus Juris 147, Sec. 186.
When we examine the evidence we find nothing from which the court could determine the ability of the debtors to pay or the chance of actually collecting. We find that the Bank Commissioner, as stated in the petition, is of the opinion that the compromise offered is a good one and 8 should be accepted. Why? Because the debtors have no other property, or because the property each has is inaccessible to execution or because the equity in the trust property is worth less than $50,000.00 and there is no other property available? None of these facts appear. In fact, from the evidence, it appears that the equity of the unsecured creditors of the trustors of the trust might be worth considerably more than $50,000.00. Furthermore the compromise offer was not for that amount. Fifty thousand was *Page 374 
to be paid in 30 days, but, if not paid, the unsecured creditors were to take deeds and transfers of the property subject to liens, which the trust embraced, in full for all the indebtedness of the trustors as well as for a full release of Preston G. Peterson, who, so far as the record shows, was not a debtor who had contributed anything to the trust. In other words, it is a matter of choice with the debtors whether they paid. If the equity should, in their opinion, be less than $50,000.00, they could obtain a full release by conveying the equity. Apparently, therefore, they would be in a position, if the so-called compromise were accepted, to get a full release by turning over to their unsecured creditors the equity in the various pieces of property in the trust, which equity already belonged to thesecreditors without obligation to give a release. There appears to be nothing in the trust deed which specifies that the property conveyed to the trust to be liquidated and the net proceeds paid to the unsecured creditors should be in full for the obligations of the debtor trustors. It transpires, therefore, that what the Bank Commissioner was willing to take in full for all indebtedness, was this very property which he already as beneficiary had on account of the indebtedness for the privilege of liquidating it himself and getting the trustees and trustors out of the way.
It is also contended by appellant that the order of the court terminated the trust and that the trust cannot be terminated otherwise than by its terms. The trust deed provided that it could be terminated by agreement of the parties thereto. It was contended by one side that all the 9 parties thereto, in agreeing to the offered compromise which in effect involved a termination of the trust, had consented to its termination. It was contended by the other side that since the trust was for the benefit of the creditors of the bank, they had to consent. We do not need to pass on whether the trust can be terminated by the parties thereto only, or whether it requires also the consent of the alleged beneficiaries. The trust was but part of the mechanics for *Page 375 
liquidating property which would ultimately have been a resort for the collection of the obligations of the trustors. We cannot see how this trust can stand between the court and its power to compromise bad or doubtful debts. The situation of the property under the trust at the time the court has the matter under consideration is one of the matters which it must take into consideration as part of the whole situation. A stable or precarious condition of the property under the trust, as of the time of inquiry, as respects lienholders is one part which may have influence with the court in its decision as to whether that situation was brought about by reason of the trust or the manner in which it was administered or otherwise. The court cannot turn back the clock on events respecting the property while it was under the trust, but its power is not curtailed because of the legal fact of the trust. The court's power requires the total situation to be inquired into. Otherwise, trusts might be created in order to protect debtors. Creditors might be temporarily appeased and held off by them and then later the trust or assignment stand in the way of the court's power to consider the whole situation in determining whether a compromise should be accepted. The court in this case must inquire into the debtors' ability to respond. In that inquiry it takes into consideration the property in the trust, treating the latter as in the nature of an assignment of property on account of debts. It also must inquire as to any other property of the debtors. Then with the total situation before it, it determines the question of whether it is better for the Bank Commissioner to take the property which happens to be in a trust in full for release of the trustors' and Preston Peterson's debts, or leave it in the shape it is in where the accruals of liquidation, if any, will ultimately come to the unsecured creditors. A provision that the trust entered into as part of the mechanics of collecting claims, may not be terminated except by the happening of certain conditions, cannot affect the court's statutory power to determine whether the debts should be compromised. Those provisions cannot *Page 376 
constitute a barrier to the exercise of the court's power to determine, under the situation as it exists at the time of theproposed compromise, whether the debts should or should not be compromised as offered.
The judgment of the lower court is reversed with instructions to permit petitioners to amend their petition for acceptance of the so-called offer of compromise if they be so advised, and thereupon to proceed as in law prescribed. Costs are granted to appellants, payable out of the funds of the insolvent bank in the Bank Commissioner's hands.
FOLLAND, C.J., HANSON, and MOFFAT, JJ., and H.D. HAYES, District Judge, concur.
LARSON, J., being disqualified, did not participate herein.