## LUSTIG v. INTERMOUNTAIN BUILDING & LOAN ASS'N et al.

No. 6369.   Decided March 23, 1942.   (122 P. 2d 707.)

See 9 Am. Jur., 176; 12 C. J. S., Building & Loan Associations,. sec. 115.

*M. C. Faux* and *Ingebretsen, Ray Rawlins & Christensen,* all of Salt Lake City, for appellant.

*Ralph T. Stewart, Joseph D. Hurd,* and *Edwin B. Cannon,* all of Salt Lake City, for respondents.

PRATT, Justice.

In the interest of brevity, we shall refer to the United States Fidelity and Guaranty Company as the Claimant, the Intermountain Building and Loan Association as the Association, the Bank Commissioner of the State of Utah as the Commissioner, James L. White as the Ancillary Receiver, the receiver appointed by the Federal District Court of Arizona as the Primary Receiver, and the district courts involved as the Arizona Federal District Court and the Utah State District Court.

Claimant seeks an order from the Third Judicial District Court of this state (the Utah State District Court under the above designations) directing the Ancillary Receiver of the assets of the Association to recognize and pay its claim for certain money expended in settlement of a suit against claimant by the Primary Receiver of Arizona, who was appointed by the United States District Court for the District of Arizona (the Arizona Federal District Court

in the above designations). Claimant's theory is that the expenditure is an expense of liquidation. The background of the claim in detail may be found in *Intermountain Building & Loan Ass'n* v. *Gallegos,* 9 Cir., 78 F. 2d 972.

Briefly, it is founded upon the following facts: Creditors of the Association filed suit in the Arizona Federal District Court seeking the appointment of a receiver. The Association was a Utah corporation which originally had its principal place of business in Utah, but which moved to Arizona. After taking possession of the assets of the Association in Arizona, the Commissioner petitioned the Arizona Federal District Court for permission to intervene in that suit, claiming that he as Utah State Bank Commissioner had the exclusive right to the possession of those assets and to liquidate the Association. That court decided against him, and enjoined his taking of any of the Arizona assets out of that state. The Commissioner appealed, and in order to retain the assets then in his possession, filed a supersedeas bond upon which the Commissioner and the Association, as a Utah corporation, appeared as principals, and Claimant appeared as surety. The principals of the bond agreed to indemnify the surety against any loss upon the bond.

To obtain the bond, the Commissioner filed a petition before the Utah State District Court asking that court to take jurisdiction of the liquidation and also a petition to grant him authority to obtain and file the bond. Both petitions were granted, the latter without any notice or a hearing thereon.

While said matter was in the courts, the Commissioner expended certain sums of money from the assets in Arizona as well as from the assets in Utah. Commissioner's appeal of the federal case was lost; and the Primary Receiver brought suit against the Claimant in the Arizona Federal District Court to recover on the bond the amount of those expenditures. That suit was settled by the Claimant, after notice to the Commissioner, but without his consent. The amount of that settlement plus attorney's fees in obtaining

it is the claim which Claimant sought to have the Utah State District Court allow, and is the subject of this appeal. The Ancillary Receiver was appointed by the latter court after the Commissioner had surrendered the Arizona assets to the Primary Receiver. The Commissioner surrendered the Utah assets of the Association to the Ancillary Receiver. The latter refuses to recognize Claimant's claim.

We are of the opinion that this claim is not properly chargeable as an expense of liquidation. It is the duty of the Commissioner to preserve the assets and business of the bank to be liquidated, and to liquidate the affairs thereof. Section 7-2-12, R. S. U. 1933, as amended ■ in 1933, c. 4. He is authorized to collect all debts due and claims belonging to the bank; and upon the order of the court may sell or compound all bad or doubtful debts. On like order he may sell all real estate and personal property. He may borrow money and issue evidence of indebtedness therefor, and to secure the repayment therof, may mortgage, pledge, transfer in trust, or hypothecate any or all of the bank property, real or personal or mixed. These duties may all be performed for the purpose of facilitating liquidation, protecting or preserving assets, expiditing the making of distributions to depositors or other creditors, or for the purpose of reopening, reorganizing, or merging said institution with another. We have expressed these duties almost as they are set out in section 7-2-12 above as amended. They are, for practical purposes, self-explanatory. The expenses necessary to accomplish these objects are, upon approval by the court, payable out of the assets, as expenses of liquidation, section 7-2-14, R. S. U. 1933. The allowance or disallowance of the expenses is not a matter of difference of opinion between the Commissioner and the court as to what should have been done; but is a question of whether or not the expenses were reasonably necessary, incurred in good faith, and whether the Commissioner regularly pursued his authority. *In re State Bank of Millard County*, 84 Utah 147, 30 P. 2d 211.

Does the expenditure herein sought to be charged as an expense fall within those requirements?

We must presume that whichever officer liquidates the Association—the Commissioner or the Primary Receiver—he will liquidate it according to law. We must recognize as well that assets within the jurisdiction of Arizona are subject to the Arizona laws, and that state is not required to surrender those assets to the Bank Commissioner of Utah. Under such circumstances one cannot escape the conclusion that the furnishing of the supersedeas bond was not a step toward preserving the association assets, nor a step toward facilitating ultimate liquidation. It amounts merely to a conflict between officials as to which should liquidate the association, either official being legally capable of a proper liquidation. In the eyes of the law a decision either way would neither advance nor retard the ultimate liquidation of the association.

The fact that the Commissioner first sought a court order before obtaining and filing the bond does not change the picture. Liquidation by the Bank Commissioner of this state, in this state, is not a court receivership. The Commissioner's jurisdiction of the Utah assets is statutory, and the court is only interested to the extent authorized by the statute. Whether the approval of the expense item occurs before or after actual expenditure of the money is immaterial so far as determining whether or not the item is an expense properly chargeable against the assets of the association according to statute.

We find no error in the lower court's decision. It is affirmed. Costs to respondent.

We invite attention to the recent case of *Fischer* v. *American United Life Insurance Co.*, 62 S. Ct. 380, 86 L. Ed. ___, decided January 5, 1942.

MOFFAT, C. J., and LARSON, J., concur.

McDONOUGH, J., concurs in the result.

WOLFE, Justice (concurring in the result).

The ultimate question here presented is whether the surety on the supersedeas bond may charge, by virtue of its indemnity agreement with the principals (the Association and Bank Commissioner of Utah), the assets of the insolvent estate of the Intermountain Building & Loan Association before the creditors of that Association have been fully paid. If, as contended for by respondent, the Bank Commissioner had no authority in law to bind the assets of the insolvent corporation without giving the creditors notice and an opportunity to object, the above question must be answered in the negative.

I place my concurrence in the result mainly on the basis that the order of our District Court permitting the Bank Commissioner to procure a contract surety bond was issued without notice of the application for approval of the proposed supersedeas bond and the attendant indemnity agreement. The Commissioner had possession of the Arizona assets and the books of the company although enjoined by the Federal District Court for Arizona from taking them from the jurisdiction of that court. There is no showing that he could not have obtained a stay order sufficient to enable notice of his application for supersedeas bond to be given to the creditors, nor is there any showing that the probable custody of the temporary receiver, application for which was pending in the Federal Court at the time the injunction against removal by that court was made on April 10, 1934, would have endangered the assets.

Any agreement, expressed or implied, to indemnify the surety for loss in case the judgment of the Federal District Court for Arizona was sustained by the Circuit Court of Appeals of the Ninth Circuit, was, in effect, pledging the assets of the insolvent Association. The result is the same whether assets are actually put up as indemnity, or whether money is borrowed on pledged credit, or whether an agreement is entered into to pay any loss which may be recovered by the respondents in the Federal suit which ultimately will involve a payment out of assets or a prior charge against

them. The result, if the loss must ultimately be paid out of assets, will be to decrease the assets of the estate available to creditors. Section 7-2-12, R. S. U. 1933, as amended by Chapter 4, Session Laws, 1933, was meant to give the creditors a right to be heard on a matter when their assets were to be pledged or lien or charge prior to their claims fastened upon those assets. In an insolvent institution the assets belong to them, and the Commissioner is a trustee charged with the duty to preserve them. These are not ordinary expenses of administration approval of which may be obtained by the court without previous authority obtained. Before he charges the assets with a lien or claim under an asserted endeavor to preserve or obtain possession of those or other assets belonging to the insolvent institution, he must give them opportunity to be heard in his application seeking court approval. The authority of the Bank Commissioner under Section 7-2-12, R. S. U. 1933, as amended is conditioned on such notice. I think Section 7-2-12 applies to building and loan associations as well as banks. The words "such institution" in Section 7-2-12, as amended by Chapter 4, Session Laws 1933, when traced through the 1933 revision, appears to refer to *all* institutions of which the Commissioner has jurisdiction and not withstanding of the title and the use of the word "bank" in connection with "directors" and "committee of depositors."

The view above expressed makes it unnecessary to discuss the question of the wisdom of obtaining the supersedeas bond instead of leaving the assets in Arizona under the control of the Federal Court for Arizona pending the appeal to determine where jurisdiction of the assets lay. And this view also disposes of the fear of applicants herein that a decision against its contentions will put the Commissioner, whose duty it is to preserve assets, in a position where, if he attempts honestly to do that very thing, he may act at his peril if it ultimately transpires that his judgment of the law and his action thereon after advice of legal counsel turns out to be wrong. If, after giving notice to creditors,

our District Court had granted his application made in good faith to enter into a contract for a surety bond and give indemnity, the creditors or any successor receivers would be foreclosed from objecting to the claim of the surety for losses required to be paid either by way of judgment obtained against it or by bona fide settlement of a claim against it where the principal was asked to defend or consent to the settlement but refused to do either. In such case any defense to a payment of the claim would be reduced to the question of the bona fide and reasonableness of the settlement.

In a hearing upon notice to creditors, if there was any objection, all of the matters bearing on the advisability of pursuing an appeal from the decree of the Federal Court for Arizona or of retaining assets by giving a supersedeas bond could have been thrashed out in the light of the charge that the contest involved only a competition between officers for possession and administration of the assets and that the Commissioner with knowledge or means of knowledge of the association had too long delayed in his endeavor to acquire possession of the Arizona assets, or in the light of a charge that his zeal to obtain them arose more from a desire to permit the Association to continue in business after he should have known of this incompetent management, than to protect creditors.

Since the Commissioner himself as principal on the bond could not, having acted without legal authority, obtain recoupment from the assets now being administered by the ancillary receiver under the aegis of our District Court, the appellant cannot ask recoupment for losses paid by it to the Arizona receiver caused by the administration of its principal.

Also what has been said above makes it unnecessary to touch on the question of whether a contract surety required to pay losses which it obliged itself to pay in event of a certain contingency can, in any event, recoup itself under the theory that it is a receiver's expense and, hence, a prior

charge on assets of the estate to be paid ahead of all creditors not in the same category.